U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

NOV 0 1 2010

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

ABF FREIGHT SYSTEM, INC.                                                     **PLAINTIFF**

vs.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, TEAMSTERS NATIONAL
FREIGHT INDUSTRY NEGOTIATING
COMMITTEE, TEAMSTERS LOCAL
UNION 373, TEAMSTERS LOCAL UNION
878, AS AND FOR THEMSELVES AND AS
REPRESENTATIVES OF A CLASS OF
TEAMSTERS LOCAL UNIONS THAT ARE
PARTIES TO THE NATIONAL MASTER
FREIGHT AGREEMENT, YRC INC., NEW
PENN MOTOR EXPRESS, INC., USF
HOLLAND, INC. and TRUCKING
MANAGEMENT, INC.                                                           **DEFENDANTS**

Case No. 5:10-CV-_5209_

**COMPLAINT FOR ORDER APPOINTING NEUTRAL TRIBUNAL**
**AND, IN THE ALTERNATIVE,**
**CLASS ACTION (DEFENDANT CLASS) COMPLAINT**

Plaintiff ABF Freight System, Inc., by its counsel, Littler Mendelson, P.C., for its

complaint against defendants, alleges:

**SUMMARY OF ACTION**

1.      This lawsuit involves violations of the National Master Freight Agreement

("NMFA"), the labor contract that has governed unionized freight operations in the United States

for almost a half century.

2.      Plaintiff ABF Freight System, Inc. (ABF) has a dispute with, among other parties,

the International Brotherhood of Teamsters, who in the midst of the most troubled economic

times since the Great Depression, granted substantial economic and financial concessions to some, but not all, employers bound by the NMFA in direct contravention of the contract.

3.      Plaintiff ABF brings this suit for enforcement of the NMFA grievance procedure, and alternatively, for breach of the NMFA.

4.      The First Cause of Action relates to the grievance procedure of the NMFA. Under the NMFA, there is a grievance process, and the dispute between plaintiff and defendants, valued by ABF to be in the approximate amount of Seven Hundred Fifty Million Dollars ($750,000,000), would normally be resolved before the National Grievance Committee, or the National Review Committee.  The National Grievance Committee consists of a tribunal having an equal number of employer and union representatives.   The National Review Committee consists of the chair of a union committee, and the president of the organization that represents some, but not all employer parties to the NMFA.

5.      Under the rules applicable to both the National Grievance Committee and the National Review Committee, no party involved in a dispute may sit to hear the dispute.

6.      The grievance of ABF, attached as Exhibit "A", is against companies and unions whose representatives sit on both the National Grievance Committee and National Review Committee.  Accordingly, under the rules applicable to both the National Grievance Committee and the National Review Committee, neither the National Grievance Committee nor the National Review Committee may hear this case.  For this reason, ABF seeks an order from this Court appointing an alternative tribunal to hear the grievance of ABF.

7.      The Second Cause of Action is pled in the alternative.  If the Court declines to appoint an alternative tribunal to hear the grievance of ABF, or if a tribunal appointed by the Court cannot issue a decision, ABF seeks redress directly from the Court for the violation of the

NMFA by all defendants, including a defendant class consisting of all Teamster Local Unions that are party to the National Master Freight Agreement.  The Second Cause of Action seeks an order from this Court setting aside a series of agreements between Teamsters entities and other employers that were improperly entered into, plus damages.

### JURISDICTION AND VENUE

8.      Because this is an action for a violation of a national agreement between employers and labor organizations representing employees in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 185, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

9.      Plaintiff ABF is a corporation organized under the laws of the State of Delaware duly registered to do business within the State of Arkansas, and has its principal place of business within this judicial district in Fort Smith, Arkansas.

10.     The companies who sought and achieved the improper amendments to the NMFA are YRC Inc., New Penn Motor Express, Inc., and USF Holland, Inc. ( collectively, the "YRCW Companies"), which are all owned by YRC Worldwide Inc.

11.     The agent for contract negotiations for the YRCW Companies, at all times relevant to this complaint, was Trucking Management, Inc. ("TMI") which also acts as agent for plaintiff ABF in contract administration matters, but not for contract negotiations.

12.     Venue is proper within this judicial district with respect to the defendants International Brotherhood of Teamsters ("IBT"), the Teamsters National Freight Industry Negotiating Committee ("TNFINC"), Teamsters Local Union 373, and Teamsters Local Union 878, pursuant to Section 301(c) of the LMRA, 29 U.S.C. § 185(c), because these defendants are

labor organizations within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and their duly authorized officers or agents have been or are engaged within this judicial district representing or acting for employee members, including employee members employed within this judicial district.

13.   Venue is proper within this judicial district with respect to the defendants YRC Inc. and USF Holland, Inc. because each is registered to do business within the State of Arkansas, and each caused damages to be suffered by plaintiff within this judicial district.

14.   Venue is proper within this judicial district with respect to defendant New Penn Motor Express, Inc., because New Penn Motor Express, Inc. is commonly owned along with YRC Inc. and USF Holland, Inc., and with respect to the IBT and TNFINC, acts closely in concert with its sister companies YRC Inc. and USF Holland, Inc., and acted closely with them, causing damages to be suffered by plaintiff within this judicial district.

15.   Venue is proper within this judicial district with respect to Trucking Management, Inc. because that corporation is an agent of plaintiff for some purposes with respect to the NMFA, and to fulfill those duties regularly transacts business with plaintiff such that it has sufficient contacts within the State of Arkansas to be subject to process and jurisdiction within the State of Arkansas.

16.   Venue is also proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to these claims occurred within this judicial district.

## FIRST CAUSE OF ACTION

### PARTIES

17.   This Cause of Action is primarily against defendants IBT, TNFINC and TMI. The YRCW Companies are named as defendants pursuant to Federal Rule of Civil Procedure 19.

## THE EMPLOYER ABF

18.     ABF is one of the largest unionized national freight trucking companies still doing business in the United States.  ABF is a common carrier by truck.

19.     With trucking operations located in Arkansas and throughout the Continental United States employing approximately 8,000 employees covered by union agreements, ABF is an employer in an industry affecting commerce within the meaning of Sections 2(6), 2(7), and 301 of the LMRA, 29 U.S.C. §§ 152(6), 152(7), and 185.

## THE LABOR ORGANIZATIONS

20.     Defendant International Brotherhood of Teamsters is a labor organization within the meaning of 29 U.S.C. §§ 152(5) and 185.  The IBT represents employees in industries affecting commerce within the meaning of section 301 of the LMRA, 28 U.S.C. § 185, including the trucking industry.

21.     ABF and defendant IBT are parties to a national freight industry collective bargaining agreement known in the trucking industry as the National Master Freight Agreement, or NMFA, which includes a number of supplements to that agreement generally known within the trucking industry as "Supplemental Freight Agreements."

22.     The NMFA was negotiated on behalf of the IBT and local unions affiliated with the IBT representing employees in the unionized sector of the freight industry by and through their bargaining agent, defendant Teamsters National Freight Industry Negotiating Committee.

23.     Defendant Teamsters National Freight Industry Negotiating Committee is a labor organization representing employees in an industry affecting commerce within the meaning of section 301 of the LMRA, 28 U.S.C. § 185.  TNFINC is an industry-specific bargaining committee of the IBT and acts as agent for the IBT and the local unions affiliated with the IBT

that represent employees covered by the NMFA.  TNFINC is the nominal union signatory to the NMFA.

24.     In its role as contract administrator for the IBT and all Teamster Local Unions party to the NMFA, TNFINC is responsible for appointing union members of an arbitral panel to hear national grievances brought by or against any employer subject to NMFA, and grievances brought by or against the IBT, TNFINC, and any Teamster Local Union under the NMFA.

### THE YRCW COMPANIES

25.     YRC Inc. is a corporation organized under the laws of the State of Delaware and is registered to do business in the State of Arkansas.

26.     A company called Yellow Freight System Inc. was a corporation organized under the laws of Indiana and, in 2008, that company merged into a company called Roadway Express, Inc.  The company formerly known as Yellow Freight System Inc. was a party to the NMFA, as was the company called Roadway Express, Inc.

27.     The company formerly known as Roadway Express, Inc. changed its name to YRC Inc. in 2008.

28.     YRC Inc. is a party to the NMFA.

29.     New Penn Motor Express, Inc. ("New Penn") is a corporation organized under the laws of the Commonwealth of Pennsylvania.

30.     New Penn is a party to the NMFA.

31.     USF Holland, Inc. ("Holland") is a corporation organized under the laws of the State of Michigan, and is registered to do business in the State of Arkansas.  USF Holland, Inc. trades under the fictitious name, "Holland."

32.     Holland is a party to the NMFA.

## **TRUCKING MANAGEMENT, INC.**

33.     Trucking Management, Inc. is a non-profit corporation organized under the laws of the State of Delaware, with headquarters in Kansas.

34.     TMI is the bargaining representative for an association of employers.  There are two classes of membership in the association represented by TMI:  Bargaining Members, and Contract Administration Members.   TMI represents Bargaining Members in collective bargaining and contract administration.  TMI represents Contract Administration Members in contract administration, but not in collective bargaining.

35.     Prior to the negotiations for the current 2008-2013 NMFA, which replaced the NMFA Agreement that expired in 2008, TMI was the bargaining representative for ABF and the companies that are now the YRCW Companies, as well as other companies.

36.     ABF withdrew from membership in TMI as a Bargaining Member just prior to the negotiations for the agreement to replace the NMFA agreement that expired in 2008.  ABF remains a Contract Administration Member of TMI.  In its role as contract administrator for ABF, it would be the normal duty of TMI to appoint employer members of an arbitral panel to hear grievances brought by or against ABF.

37.     In its role as contract administrator for the YRCW Companies, it is TMI's duty to appoint employer members of an arbitral panel to hear grievances brought by or against any YRCW Company.

38.     The companies that are now the YRCW Companies were Bargaining Members of TMI during the negotiations for the agreement that was to replace the NMFA was in effect for the five year period ending March 31, 2008.

### THE COLLECTIVE BARGAINING AGREEMENT AT ISSUE

39.     Employer ABF, defendant labor organizations IBT, TNFINC, Teamsters Local Union 373, and Teamsters Local Union 878, and all Teamsters Local Unions that are member local unions of the defendant class (collectively the "Defendant Labor Organizations"), are parties to a written contract entered into on or about January 30, 2008 ("the Interim Agreement"), attached hereto as Exhibit "B."

40.     According to the terms of the Interim Agreement, the parties agreed to be bound by the terms of an agreement then under negotiation by TMI, which came to be the National Master Freight Agreement and its Supplemental Freight Agreements, effective April 1, 2008 and expiring on March 31, 2013 (the "2008-2013 NMFA").

41.     The Interim Agreement specifically provided that upon ratification of the 2008-2013 NMFA, ABF would become a party and signatory to the 2008-2013 NMFA, also referred to as the "national standards agreement."

42.     The 2008-2013 NMFA was ratified effective February 10, 2008, to go into effect on April 1, 2008, and by operation of the Interim Agreement, ABF became a party and signatory thereto.

43.     ABF employees represented by the Teamster Local Unions, TNFINC and the IBT were all eligible to participate in the ratification process for the 2008-2013 NMFA, and many of them did participate in the ratification process.

44.     Employees of the YRCW Companies also participated in the ratification process for the 2008-2013 NMFA.

45.     Each of the YRCW Companies are parties to the 2008-2013 NMFA.

46.     The Defendant Labor Organizations are all parties to the 2008-2013 NMFA.

47.     The 2008-2013 NMFA provides in Article 2, Section 4 - Single Bargaining Unit:

> The employees, Unions, Employers and Associations covered under this Master Agreement and the various Supplements thereto shall constitute one (1) bargaining unit and contract. It is understood that the printing of this Master Agreement and the aforesaid Supplements in separate Agreements is for convenience only and is not intended to create separate bargaining units.

48.   The 2008-2013 NMFA provides in Article 6, Section 1 - Maintenance of Standards:

> The Employer agrees, subject to the following provisions, that all conditions of employment in his/her individual operation relating to wages, hours of work, overtime differentials and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, and the conditions of employment shall be improved whenever specific provisions for improvement are made elsewhere in this Agreement.

49.   The 2008-2013 NMFA provides in Article 6, Section 2(a) - Extra Contract Agreements:

> The Employer agrees not to enter into any agreement or contract with its employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such agreement shall be null and void.

50.   The 2008-2013 NMFA provides in Article 31, Multi-Employer, Multi-Union Unit:

> The parties agree to become a part of the multi-employer, multi-union bargaining unit established by this National Master Freight Agreement, and to be bound by the interpretations and enforcement of this National Master Freight Agreement and Supplements thereto.

51.   The 2008-2013 NMFA provides in Article 8, Section 2(b):

> 4. The decision of any grievance committee or panel shall be specifically limited to the matters submitted to it and the grievance committee or panel shall have no authority in any manner to amend, alter or change any provision of the Agreement.

52.     Prior to 2003, the NMFA contained language that would have allowed the IBT, TNFINC, and the Teamster Local Unions party to the NMFA to give concessionary relief to individual employers that met certain guidelines of TNFINC.  Specifically, Article 6, Section 2(b) of the NMFA that was in effect prior to 2003 provided:

> Section 2. Extra Contract Agreements
>
> ...
>
> (b) Consistent with past interpretations made by the National Grievance Committee, wage reduction job security plans or other programs which comply with guidelines established by the Teamsters National Freight Industry Negotiating Committee are not violative of this Section.
>
> Current wage reduction job security plans established prior to April 1, 1998, shall be subject to a revote of the unit employees as provide in this Section within thirty (30) days of notice of ratification of the NMFA or as soon as is legally permissible after having been approved by TNFINC to conform with the guidelines established under this Section.  Such current plans shall remain in effect until the later of expiration of the plan or until a replacement plan is approved by a unit employee vote as provided in this Section.  Failure to obtain the required unit employee vote under this Section will result in restoration of full NMFA wages and wage related fringes effective April 1, 1998, or when legally permissible.
>
> Wage deduction under any Plan hereinafter adopted shall not exceed fifteen percent (15%) of the applicable wage rates, and such Plan shall be adopted only if approved by seventy five percent (75%) of the employees voting by secret ballot (in which case all unit employees shall be covered by such Plan).
>
> See Wage Reduction Job Security Plan Guidelines Appendix A
>
> The new hire rate provide for in Appendix A Wage Reduction Job Security Plan shall be based on the designated percentage of the current wage rate.

53.     The Appendix A, referenced in the paragraph immediately above, is attached hereto as Exhibit "C."

54.     The language quoted in paragraph 52 above was deleted from the NMFA that went into effect in 2003, and has remained omitted from the NMFA for the 2008-2013 term.

55.     The Appendix A Wage Reduction Job Security Plan that was deleted from the NMFA that went into effect in 2003 remained omitted from the NMFA for the 2008-2013 term.

56.     The deletion of the language quoted in paragraph 52 above, and the deletion of the Appendix A Wage Reduction Job Security Plan was made by agreement of TMI on behalf of employers it represented in response to the demand for their deletion by TNFINC in the negotiations that led to the 2003-2008 term of the NMFA.

### THE VIOLATION OF THE 2008-2013 NMFA BY IBT, TNFINC, TMI AND THE YRCW COMPANIES

57.     Not long after the execution of the Interim Agreement by ABF, and ratification of the 2008-2013 NMFA, the YRCW Companies, by and through their multi-employer bargaining unit representative TMI, negotiated with Defendants what purports to be a formal amendment to the NMFA.

58.     More specifically, in late 2008, the YRCW Companies, with their collective bargaining agent, TMI, together with TNFINC negotiated an NMFA amendment known as the "Memorandum of Understanding on the Wage Reduction – Job Security Plan" ("NMFA Amendment No. 1") (attached hereto as Exhibit "D").  In Section 4 of NMFA Amendment No. 1, the document specifically recites that "[t]his Plan is incorporated by reference into and shall be a part of the 2008-2013 National Master Freight Agreement and its Supplements ... ."

59.     Among other terms, NMFA Amendment No. 1 provided "Wage and mileage rate increases outlined in Article 33 of the NMFA, effective April 1, 2009, April 1, 2010, April 1, 2011, and April 1, 2012 shall also be reduced by 10%," and "The cost of living adjustment provisions of Article 33 of the NMFA shall be suspended for the duration of the NMFA."

60.     The employees of the YRCW Companies represented by the IBT ratified NMFA Amendment No. 1 on or about January 9, 2009.

61.     Following the ratification of NMFA Amendment No. 1, the YRCW Companies subsequently negotiated with the IBT what purports to be a second amendment of the NMFA known as "The Amended and Restated Memorandum of Understanding on the Job Security Plan" ("NMFA Amendment No. 2") (attached as Exhibit "E").  Section 5 of NMFA Amendment No. 2 specifically recites that "[t]his Revised Plan is incorporated by reference into and shall be a part of the NMFA."

62.     Among other terms, NMFA Amendment No. 2 increases the wage reduction from 10% to 15%, and further specifically provides that "[w]age and mileage rate increases outlined in Article 33 of the NMFA, effective April 1, 2010, April 1, 2011 and April 1, 2012 shall also be reduced by 15%."

63.     The employees of the YRCW Companies represented by the IBT ratified NMFA Amendment No. 2 on or about August 7, 2009.

64.     Following the ratification of NMFA Amendment No. 2, the YRCW Companies subsequently negotiated with the IBT what purports to be a third amendment of the NMFA known as "Agreement for the Restructuring of the YRC Worldwide, Inc. Operating Companies" ("NMFA Amendment No. 3") (attached as "Exhibit F").  The NMFA Amendment No. 3 was ratified on or about October 29, 2010.  NMFA Amendment No. 3 provides substantial modifications of material work rules of the NMFA.

65.     Section 8 of NMFA Amendment No. 3 specifically recites that the modifications contained in the amendment "are to be included as part of the first 39 Articles of the NMFA and cover the entire NMFA bargaining unit ... ."

66.     As a consequence of NMFA Amendment No. 1, NMFA Amendment No. 2, and NMFA Amendment No. 3, the NMFA was purported to be amended, with substantial wage and

benefit reductions, and changes to work rules, for the employers bound by NMFA, including a suspension of the obligation to make certain contributions to pension plans.

67.     Defendant IBT, TNFINC on behalf of themselves and the Teamster Local Unions have asserted and continue to assert that NMFA Amendments Nos. 1, 2 and 3 only apply to YRCW Companies, and to no other employer signatory to the 2008-2013 NMFA, including ABF.

68.     By negotiating NMFA Amendments No. 1, No. 2 and No. 3, providing relief to the YRCW Companies but not to other employer signatories to the NMFA, Defendants IBT and TNFINC are in violation of the NMFA, as set forth in ABF's grievance attached hereto as Exhibit "A" (the "ABF Grievance")

69.     The ABF Grievance seeks (a) a declaration that the NMFA Amendments No. 1, No. 2 and No. 3 be set aside, and that damages be awarded to ABF.

### THE GRIEVANCE MACHINERY FOR NATIONAL GRIEVANCES UNDER THE NMFA

70.     The 2008-2013 NMFA contains a grievance procedure involving a committee having panels of both union and employer representatives, which have the power to issue binding grievance decisions.   The procedure, however, is "open-ended" in that there is no binding arbitration provision if the committee fails to agree on a grievance resolution.   Both the Union and each signatory employer participate in the grievance committee process established by the 2008-2013 NMFA, but no Teamster Local Union or signatory employer is allowed to sit on a committee to hear a grievance "involving" that Local Union or signatory employer.

71.     Article 8 of the NMFA provides in relevant part:

Section 1.

All grievances or questions of interpretations arising under this National Master Freight Agreement or Supplemental Agreements thereto shall be processed as set forth below.

- 13 -

...

(b) Any matter which has been referred pursuant to Section 1(a) above, or any question concerning the interpretation of the provisions contained in the National Master Freight Agreement, shall be submitted to a permanent National Grievance Committee which shall be composed of an equal number of employer and union representatives. The National Grievance Committee shall meet on a regular basis, for the disposition of grievances referred to it, or may meet at more frequent intervals, upon call of the chairman of either the Employer or Union representatives on the National Grievance Committee. The National Grievance Committee shall adopt rules of procedure which may include the reference of disputed matters to subcommittees for investigation and report, with the final decision or approval, however, to be made by the National Grievance Committee. If the National Grievance Committee resolves the dispute by a majority vote of those present and voting, such decisions shall be final and binding upon all parties.

Cases deadlocked by the National Grievance Committee shall be referred as provided in Section 2(b) below. Procedures relating to such referrals shall be included in the Rules of Procedure of the National Grievance Committee.

The Employer may request the co-chairmen of the National Grievance Committee to appoint and convene a joint Employer and Union Committee which shall have the authority to approve uniform dispatch procedures and rules which shall apply to the individual company's over-the-road operations.

No Employer signatory to this Agreement shall be permitted to have its own grievance procedure.

Section 2.

...

(b) All grievances deadlocked at the National Grievance Committee shall be processed as set forth below.

1. All such deadlocked grievances shall be automatically referred to the National Review Committee, which shall consist of the Chairman of TNFINC, or his/her designee and the Executive Director of TMI, or his/her designee. The National Review Committee shall have the authority to resolve any such deadlocked case by review of the record presented to the National Grievance Committee or by rehearing the case, or by referring the case to a subcommittee of either the Joint National Negotiating Committee or the appropriate Supplemental Negotiating Committee to negotiate a recommended resolution of the case. The subcommittee of the Negotiating Committee to which the case was referred must report its recommendation or deadlock to the National Review Committee for resolution. Unless the National Review Committee in writing mutually agrees otherwise,

said Committee shall have a period of 15 days (excluding Saturdays, Sundays and holidays) from the date of the National Grievance Committee deadlock to resolve the case. The decision of the National Review Committee shall be final and binding.

2. In the event the National Review Committee is unable to resolve the deadlock, the President of the Employer involved and the Chairman of TNFINC shall have 30 additional days (excluding Saturdays, Sundays and holidays), from the final day of consideration by the National Review Committee to attempt to resolve the case. The TMI and TNFINC representatives on the National Review Committee shall be responsible for notifying the President of the Employer involved and the Chairman of TNFINC of the final day of consideration by the Committee of the deadlocked grievance. In considering factual disputes that are deadlocked or deadlocked questions of interpretation arising out of Supplemental Agreements, the decision of either the National Grievance Committee or the National Review Committee shall be based on the provisions of the applicable Supplemental Agreement.

3. No lawyers will be permitted to present cases at any step of the grievance procedure.

4. The decision of any grievance committee or panel shall be specifically limited to the matters submitted to it and the grievance committee or panel shall have no authority in any manner to amend, alter or change any provision of the Agreement.

72.    The National Grievance Committee Rules of Procedure for the 2008-2013 term are attached hereto as Exhibit "G."

73.    The National Grievance Committee Rules of Procedure provide at Article II, Paragraph H:

Neither an Employer nor Union representative may participate as a panelist on the National Grievance Committee to decide cases involving their respective company or local union.

74.    The National Grievance Committee Rules of Procedure further provide at Article V:

No Union or Employer representative shall serve in any capacity on a Committee or Panel provided for under these Rules in hearing a case in which they were directly involved ... .

75.     The National Grievance Committee Rules of Procedure apply to both the National Grievance Committee and the National Review Committee established by the NMFA.

76.     Every employer member of the National Grievance Committee is employed either by ABF, TMI, or one of the YRCW Companies.

77.     Every Teamster or union member of the National Grievance Committee is involved with the ABF Grievance.

78.     The two members of the National Review Committee are the chair of TNFINC and the President of TMI.  Both are involved with the ABF Grievance.

79.     By operation of the Rules of Procedure, neither the currently constituted National Grievance Committee, nor the National Review Committee can properly sit to hear this grievance.

80.     Because the grievance brought by ABF concerning the separate agreement made by the YRCW Companies through TMI, and the additional separate agreement made directly by the YRCW Companies with the union defendants would be heard and resolved by a committee comprised of employees and agents for TMI and the YRCW Companies – the latter being principal competitors of ABF and principal beneficiaries of the very NMFA amendments about which ABF now complains – no committee can be constituted under the National Grievance Committee Rules of Procedure to hear ABF's grievance against IBT, TNFINC, TMI and the YRCW Companies.

81.     Because any grievance potentially brought by ABF in relation to its present dispute with defendants and any Teamster Local Union would necessarily involve the rights of all Teamster Local Unions, TNFINC and the IBT, no committee could properly be formed to

hear such a grievance, in light of the rule that no union representative is allowed to sit on a committee in which it is involved.

82.     Given the incapacity of any member of either the National Grievance Committee or the National Review Committee to hear this grievance, this Court should appoint a third party neutral tribunal to hear and decide this grievance.

## SECOND CAUSE OF ACTION

### DEFENDANT CLASS ACTION

83.     Plaintiff repeats and realleges paragraphs 1 through and including 82 of this complaint as if set forth at length herein.

84.     This Second Cause of Action is brought against all defendants, including a defendant class of Teamster Local Unions.

85.     This Second Cause of Action is pled in the alternative in the event that either the First Cause of Action is denied, or the arbitral tribunal appointed by the Court pursuant to the First Cause of Action does not reach a final and binding decision.

### CLASS ALLEGATIONS (Defendant Class)

### Numerosity and Joinder (Rule 23(a)(1))

86.     The members of the defendant class are Teamster Local Unions that are party to the 2008-2013 NMFA and represent employees of ABF.

87.     The Teamster Local Unions that are parties to the 2008-2013 NMFA and represent employees of ABF are dispersed throughout the Continental United States, having their headquarters in 46 different states, plus the District of Columbia.

88.     The members of the defendant class are approximately 160 in number.

89.     Joinder of all approximately 160 Teamster Local Unions in a single judicial district is impracticable.

### Common Questions of Law and Fact (Rule 23(a)(2))

90.     The IBT has a Constitution that was adopted by its 27th International Convention that was held June 26 to June 30, 2006, and is currently in effect (the "IBT Constitution").

91.     Article I, Section 2 of the IBT Constitution provides in part:

> The achievement of [IBT-stated] objectives within national economies that are dominated by multinational corporations and conglomerates, will require coordination of our activities to maximize our members' economic strength through national and international bargaining, the establishment of master industry-wide agreements, and the implementation of strategic organizing campaigns.

92.     Article XII, Section 2(a) of the IBT Constitution provides in part:

> If a majority of the affiliated Local Unions vote to participate in area, multi-area, national, multi-employer, company-wide, or industry-wide negotiations for an area, multi-area, national, multi-employer, company-wide, or industry-wide agreement (hereinafter "master agreement"), all involved affiliated Local Unions shall comprise a multi-union unit, be bound by such vote, must participate in such master agreement bargaining and shall be bound by the agreement approved as provided below.

93.     Article XII, Section 2(b) of the IBT Constitution provides in part:

> Where special riders, supplements, or agreements applicable to one or more Local Unions are separately negotiated and agreed to providing for wages, hours, fringe benefits, or working conditions, such special riders or supplements, shall first be approved by the master negotiating committee before being submitted to the affected members for a vote ... .

94.     The "master agreement" for the freight industry is the NMFA.

95.     The "master negotiating committee" for the NMFA and its supplemental agreements is defendant TNFINC.

96.     The 2008-2013 NMFA, at Article 2, Section 4, provides:

> Section 4. Single Bargaining Unit

> The employees, Unions, Employers and Associations covered under this Master Agreement and the various Supplements thereto shall constitute one (1) bargaining unit and contract. It is understood that the printing of this Master Agreement and the aforesaid Supplements in separate Agreements is for convenience only and is not intended to create separate bargaining units.

97.    As described in more detail below, the issue of law presented by this complaint is whether the amendments to the 2008-2013 NMFA were proper, when it was amended to favor and give relief to the YRCW Companies but not others.

98.    The question of law presented by this complaint is identical for and among each and every Teamster Local Union that is a party to the 2008-2013 NMFA.

99.    The facts surrounding the resolution of the common issue of law presented by this complaint are identical for and among each and every Teamster Local Union that is a party to the 2008-2013 NMFA.

### Typicality of Defenses (Rule 23(a)(3))

100.    The defenses to the claims raised in this complaint are not only typical, but are identical for each and every Teamster Local Union that is a party to the 2008-2013 NMFA.

### Adequate Representation of Class (Rule 23(a)(4))

101.    Defendant IBT violated the 2008-2013 NMFA by altering its terms on behalf of the Teamster Local Unions, to favor only the YRCW Companies.  Accordingly, the IBT is well positioned to assert the defenses available concerning the alteration of the 2008-2013 NMFA.

102.    Defendant TNFINC violated the 2008-2013 NMFA by altering its terms on behalf of the Teamster Local Unions, to favor only the YRCW Companies.  Accordingly, TNFINC is well positioned to assert the defenses available concerning the alteration of the 2008-2013 NMFA.

103.   Under the IBT Constitution and the 2008-2013 NMFA, the IBT is already the designated representative of its member Teamster Local Unions.

104.   Under the IBT Constitution and the 2008-2013 NMFA, TNFINC is already the designated representative of the IBT's member Teamster Local Unions that are bound by the NMFA.

105.   Defendant Teamsters Local Union 373 has an interest in defending itself against the claim made in this complaint, and is therefore an adequate representative of the defendant class of Teamster Local Unions that are parties to the NMFA.

106.   Defendant Teamsters Local Union 878 has an interest in defending itself against the claim made in this complaint, and is therefore an adequate representative of the defendant class of Teamster Local Unions that are parties to the NMFA.

### Risk of Inconsistent or Varying Adjudications (Rule 23(b)(1)(A))

107.   If plaintiff filed actions across the country seeking the relief sought by this complaint against each Teamster Local Union that is a party to the NMFA, the number of lawsuits would be at least 47 – one in every Continental State of the United States except Wyoming and North Dakota, plus the District of Columbia.

108.   If differing courts made different rulings on the claims of plaintiff filed in 47 different lawsuits, the Teamster Local Unions would have incompatible standards of conduct and terms and conditions of employment in their collective bargaining relationships, in that some Teamster Local Unions would be bound by the 2008-2013 NMFA as amended to favor other employers, and some would be bound by the 2008-2013 NMFA as initially ratified in February 2008, despite the fact that all are parties to the same agreement.

**Inconsistent and Dispositive Adjudications (Rule 23(b)(1)(B)**

109.    If plaintiff filed 47 actions across the country against the Teamster Local Unions

that are party to the NMFA, adjudications that are made early could be dispositive of interests of

Teamster Local Unions that are not party to the lawsuits in which the earlier adjudications are

made.

**Final Declaratory Relief is Appropriate for All Teamster Local Unions (Rule 23(b)(2)**

110.    By the terms of the 2008-2013 NMFA itself, there is one and only one collective

bargaining agreement between plaintiff and the Teamster Local Unions that are party to the

2008-2013 NMFA, and any declaration of plaintiff's rights under the 2008-2013 NMFA, and its

purported amendments subsequent to its ratification, would be binding upon both plaintiff and

each and every Teamster Local Union that is party to the 2008-2013 NMFA.

### THE NATIONAL MASTER FREIGHT AGREEMENT (NMFA)

111.    Beginning in 2007, ABF entered into contract negotiations with TNFINC, agent

for and designated bargaining representative of the IBT, and the Teamster Local Unions that are

members of the IBT, for a successor collective bargaining agreement to the 2003-2008 National

Master Freight Agreement (the "2003-2008 NMFA").

112.    By its terms, the 2003-2008 NMFA was to expire on March 31, 2008.

113.    In 2007, TMI was the primary bargaining agent of the remaining unionized

general freight trucking industry employers.

114.    As noted above, defendants YRC Inc., Holland, and New Penn are related

companies, in that all of them are subsidiaries of a company called YRC Worldwide Inc.

115.    The YRCW Companies are ABF's principal unionized competitors in the freight

industry.

116.    Beginning in 2007, and continuing through January 2008, the IBT and local unions affiliated with the IBT, acting through their authorized agents, including TNFINC, James P. Hoffa ("Hoffa"), IBT General President and Chairman of TNFINC; C. Thomas Keegel ("Keegel"), IBT General Secretary-Treasurer; Tyson Johnson ("Johnson"), IBT International Vice President and Co-Chairman of TNFINC; and Gordon Sweeton ("Sweeton"), IBT International Vice President and Assistant National Freight Director; engaged in multiple discussions with ABF concerning the potential terms of a collective bargaining agreement.

117.    On or about August 13, 2007, Robert A. Davidson, then President and CEO of ABF, sent a letter from ABF's corporate headquarters in Fort Smith, Arkansas to Hoffa, Johnson, Sweeton, and other IBT representatives providing notice that ABF was withdrawing authorization from TMI to bargain on its behalf, and that ABF would be conducting future negotiations directly with the IBT for "a new collective bargaining agreement applicable only to ABF."

118.    Despite ABF's withdrawal from the multi-employer bargaining unit represented by TMI for purposes of negotiations, ABF continues to participate in the TMI grievance panels under the NMFA, and YRCW Companies sit on ABF's panels.

119.    Johnson, on behalf of the IBT, TNFINC, and all members of the defendant class of Teamster Local Unions that are party to the NMFA (collectively, the "Labor Organization Defendants"), responded to Mr. Davidson's letter by written correspondence directed to Mr. Davidson in Fort Smith and dated August 15, 2007.  Therein, Johnson acknowledged ABF's withdrawal from TMI and indicated that the Labor Organization Defendants were "prepared to begin negotiating a new collective bargaining agreement with ABF sometime in October 2007."

120.    On or about October 1, 2007, Mr. Davidson sent a letter to Hoffa from ABF's corporate headquarters in Fort Smith, Arkansas requesting a meeting with IBT representatives.

121.    IBT representatives responded to ABF's representatives in Fort Smith to confirm arrangements for a meeting with Hoffa and others.

122.    On or about October 24, 2007, representatives for ABF met with Hoffa, Keegel, and other IBT representatives.   During the meeting the participants discussed, among other topics of mutual concern, potential terms for a collective bargaining agreement that would be separate and apart from the NMFA.

123.    Additional collective bargaining sessions attended by representatives of ABF occurred on or about November 13, 2007, and again on November 19, 2007, at which ABF representatives met with Johnson, Sweeton and other IBT representatives to discuss potential terms for a collective bargaining agreement.   Johnson and Sweeton had multiple contacts with ABF representatives in Fort Smith, Arkansas related to scheduling the meetings.

124.    Apart from the ABF negotiations, on or about January 9, 2008, TMI concluded its own negotiations with TNFINC for the 2008-2013 NMFA.

125.    On or about January 14, 2008, the IBT mailed ballots to all freight industry members, including ABF employees, and employees of YRCW Companies, encouraging those employees to ratify the "national standards agreement."

126.    On or about January 22, 2008, ABF representatives met with Johnson, Sweeton and other IBT representatives to present additional contract proposals.   In relation to the meeting, Johnson and Sweeton had multiple contacts with ABF representatives in Fort Smith, Arkansas.

127.    During the January 22, 2008 meeting Johnson informed ABF representatives that the IBT was willing to negotiate a separate agreement applicable only to ABF, but that such an

agreement would have to be done by "starting from page one" and would take "a very long time" to complete.  Johnson made clear that such negotiations would not be finalized before the expiration of the parties' then-current collective bargaining agreement, the 2003-2008 NMFA.

128.    Having signaled the Labor Organization Defendants' intentions to extend the parties' negotiations beyond the current contract term, thereby introducing the potential for a strike upon expiration of the 2003-2008 NMFA, Johnson then pressured ABF representatives to instead agree to the same contract terms as separately negotiated by TMI. More specifically, Johnson suggested that ABF sign a "Me Too" agreement to the NMFA for the 2008-2013 term.

129.    In or around the same time, Sweeton sent A.J. Phillips, then ABF's Vice President of Industrial Relations, located in Fort Smith, Arkansas, a copy of  the tentative agreements negotiated between the IBT and TMI for the 2008-2013 NMFA.

130.    On or about January 24, 2008, TNFINC distributed a memo to Teamster-represented ABF employees encouraging them to vote to approve the "Teamsters National Freight Industry Standards Agreement," suggesting that this would "give the Union maximum leverage in its negotiations with ABF."

131.    ABF representatives subsequently met with Johnson, and other IBT representatives on or about January 30 2009, and TNFINC, as agent for IBT and the Teamster Local Unions that make up the single collective bargaining unit bound by the NMFA, presented ABF with the Interim Agreement.

132.    By operation of the express terms of the Interim Agreement, ABF was to become a signatory and party to the 2008-2013 NMFA upon its ratification, and that the terms of such NMFA were to be a "national standards agreement" for all signatory employees in the freight industry.

133.    Further, in the course of such negotiations, the IBT and its associated Teamster Local Unions, including defendants Teamsters Local Union 373 and Teamsters Local Union 878 (acting through their authorized agents, including TNFINC and Johnson), represented that the purpose and intent of the Interim Agreement was to bind ABF to the same terms and conditions of employment applicable to all other NMFA employer signatories.

134.    As alleged elsewhere in this Complaint, defendants entered into agreements purporting to amend the NMFA only for the YRCW Companies, namely NMFA Amendment No. 1, NMFA Amendment No. 2 and NMFA Amendment No. 3.

### ABF IS ENTITLED TO A DECLARATION SETTING ASIDE THE PURPORTED NMFA AMENDMENTS

135.    A consequence of IBT's and TNFINC's assertion that the NMFA Amendments No. 1, No. 2 and No. 3 favor only the YRCW Companies, is that the amendments are asserted to amend the 2008-2013 NMFA to favor some, but not all signatories to the 2008-2013 NMFA, namely, YRCW Companies.

136.    By purporting to amend the 2008-2013 NMFA in way such that it favored some, but not all signatories to the 2008-2013 NMFA, the IBT, TNFINC and the defendant class of Teamster Local Unions, including defendants Teamsters Local Union 373 and Teamsters Local Union 878, violated Article 2, Section 4 ("Single Bargaining Unit") (quoted at paragraph 47 of this complaint), Article 6, Section 1 ("Maintenance of Standards") (quoted at paragraph 48 of this complaint), Article 6, Section 2(a) the 2008-2013 NMFA  ("Extra Contract Agreements") (quoted at paragraph 49 of this complaint) and other sections of the NMFA.

137.    The YRCW Companies were given an improper competitive advantage over ABF that is not consistent with the terms of the 2008-2013 NMFA by which ABF, the YRCW

Companies, other employer signatories to the 2008-2013 NMFA and the Defendant Labor Organizations are bound.

138.   Because the adoption of the NMFA Amendments No. 1, No. 2 and No. 3 was in violation of the 2008-2013 NMFA, they should be set aside by this Court, by a declaration that to the extent that those amendments were to favor the YRCW Companies, and no other employer signatory to the 2008-2013 NMFA, they are in violation of the 2008-2013 NMFA, and are thus null and void.

139.   ABF is entitled to damages because of the breach by all defendants of the NMFA in an amount estimated at the time of the filing of this complaint to be, for the period of time from the first violation through March 31, 2013, the expiration date of the 2008-2013 NMFA, Seven Hundred Fifty Million Dollars ($750,000,000).

WHEREFORE, On the First Cause of Action, Plaintiff prays that the Court grant it relief as follows:

1.   Entry of an order declaring the National Grievance Committee as not having capacity to hear and decide the grievance of ABF Freight System, Inc.;

2.   Entry of an order declaring the National Review Committee as not having capacity to hear and decide the grievance of ABF Freight System, Inc.; and

3.   Entry of an order appointing a third party neutral tribunal to hear and determine the grievance of ABF Freight System, Inc.

4.   Entry of an order granting such further relief as the Court deems just and proper.

On the Second Cause of Action, Plaintiff prays that the Court grant it relief as follows:

5.   Entry of an order declaring NMFA Amendment No. 1, NMFA Amendment No. 2 and NMFA Amendment No. 3 to be null and void;

6.   Entry of an order disallowing any further amendments to the NMFA that further favor the YRCW Companies;

7.   Entry of judgment for money damages, including interest, in favor of ABF and against all defendants in an amount to be determined at trial; and

8.   Entry of an order granting such further relief as the Court deems just and proper.

Dated:  Fayetteville, Arkansas
          November 1, 2010

Respectfully submitted,

LITTLER MENDELSON, P.C.

By:   _____
          Robert F. Millman
          Robert C. Long
          Gerald T. Hathaway
          R. Scott Summers


One Steele Plaza
3739 Steele Boulevard
Suite 300
Fayetteville, AR 72703
Telephone: 479-582-6100

*Attorneys for Plaintiff ABF Freight System, Inc.*