U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

NOV 01 2010

CHRIS R. JOHNSON, Clerk
By _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ABF FREIGHT SYSTEM, INC.                                     PLAINTIFF

vs.

INTERNATIONAL BROTHERHOOD OF         CASE NO. 5:10-CV- 5209
TEAMSTERS, TEAMSTERS NATIONAL
FREIGHT INDUSTRY NEGOTIATING
COMMITTEE, TEAMSTERS LOCAL
UNION 373, TEAMSTERS LOCAL
UNION 878, AS AND FOR
THEMSELVES AND AS
REPRESENTATIVES OF A CLASS OF
TEAMSTERS LOCAL UNIONS THAT
ARE PARTIES TO THE NATIONAL
MASTER FREIGHT AGREEMENT, YRC
INC., NEW PENN MOTOR EXPRESS,
INC., USF HOLLAND, INC. and                                   DEFENDANTS
TRUCKING MANAGEMENT, INC.

---

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER
### APPOINTING NEUTRAL TRIBUNAL

---

Robert F. Millman
Robert C. Long
Gerald T. Hathaway
R. Scott Summers
One Steele Plaza
3739 Steele Boulevard
Suite 300
Fayetteville, AR 72703
Telephone: 479-582-6100

*Attorneys for Plaintiff ABF
Freight System, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| ABF FREIGHT SYSTEM, INC. | PLAINTIFF |
| vs. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS NATIONAL FREIGHT INDUSTRY NEGOTIATING COMMITTEE, TEAMSTERS LOCAL UNION 373, TEAMSTERS LOCAL UNION 878, AS AND FOR THEMSELVES AND AS REPRESENTATIVES OF A CLASS OF TEAMSTERS LOCAL UNIONS THAT ARE PARTIES TO THE NATIONAL MASTER FREIGHT AGREEMENT, YRC INC., NEW PENN MOTOR EXPRESS, INC., USF HOLLAND, INC. and TRUCKING MANAGEMENT, INC. | CASE NO. 2:10-CV-_____  <br><br><br><br><br><br><br><br><br><br>DEFENDANTS |

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER APPOINTING NEUTRAL TRIBUNAL

Plaintiff ABF Freight System, Inc. ("ABF") moves this Court to appoint a third party neutral tribunal to resolve ABF's claims against Defendants for violation of their labor contract, on the grounds that the Grievance Committees designated by the contract to hear the dispute are disqualified and unable to serve by virtue of their own Rules of Procedure. This Court has authority to appoint a substitute panel under Section 301 of the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 185, which confers jurisdiction on the District Courts to enforce collective bargaining agreements.

### I. FACTUAL ALLEGATIONS

A.  **The Parties and the National Master Freight Agreement**

Plaintiff ABF is a common carrier by truck and one of the few remaining unionized

national freight carriers. Defendant International Brotherhood of Teamsters ("IBT") is a labor organization representing employees in the trucking industry, including employees of ABF. ABF and IBT are parties to a national freight industry collective bargaining agreement known in the trucking industry as the National Master Freight Agreement, or NMFA, which includes a number of supplements generally known within the trucking industry as "Supplemental Freight Agreements." The NMFA at issue in this proceeding covers the period 2008 to 2013.

The 2008-2013 NMFA was negotiated on behalf of the IBT and local unions affiliated with the IBT (such as Defendants Teamsters Local Unions 373 and 878) by Defendant Teamsters National Freight Industry Negotiating Committee ("TNFINC"). TNFINC is a bargaining committee established by the IBT for the purpose of representing IBT and the local unions in national freight industry contract negotiations, and is also the nominal union signatory to the 2008-2013 NMFA. The IBT, TNFINC, Teamsters Local Union 373 and Teamsters Local Union 878, for themselves and in their representative capacity, are collectively referred to as the "Teamster Defendants."[1]

Defendants YRC, Inc. ("YRC"), New Penn Motor Express, Inc. ("Penn") and USF Holland, Inc. ("Holland") are all owned by YRC Worldwide, Inc., and are referred to herein as the "YRCW Companies." The YRCW Companies are also parties to the 2008-2013 NMFA. Defendant Trucking Management, Inc. ("TMI") was the collective bargaining agent that represented the YRCW Companies or their predecessors in negotiations for the 2008-2013 NMFA, but did not represent plaintiff ABF in those negotiations.

---

[1] Locals 373 and 878 are parties to the NMFA. They are sued in that capacity and as representatives of a defendant class of all local Teamster unions that are party to the NMFA.

### B. ABF's Underlying Contract Grievance Against Defendants

The 2008-2013 NMFA was ratified on or about February 10, 2008. Since then, the YRCW Companies have negotiated three amendments to the 2008-2013 NMFA ("NMFA Amendment Nos. 1, 2, and 3," or collectively "Amendments"). These Amendments purport to give substantial wage and benefit concessions to employers bound by the NMFA.

The Amendments are the gravamen of the underlying dispute between ABF and the Defendants. Despite the fact that ABF is a party to the 2008-2013 NMFA, that the NMFA is a national agreement that is supposed to apply to all signatory employers in the national freight industry, and that the Amendments purport to amend the NMFA, the Teamster Defendants have refused to extend the substantial economic concessions of the Amendments to ABF. ABF contends that the negotiation of these Amendments, coupled with the failure or refusal to extend their benefits to other signatory employers such as ABF, is a violation of the 2008-2013 NMFA.[2]

Pursuant to the terms of the 2008-2013 NMFA, ABF has therefore filed a grievance against the Defendants for violating the NMFA (the "ABF Grievance") by negotiating separate amendments that apply only to the YRCW Companies. Among other relief, the ABF Grievance seeks to have the Amendments set aside and that damages be awarded to ABF for the damage it has incurred as a consequence of the failure or refusal to apply the wage and benefit concessions to ABF.

### C. The Grievance Machinery for National Grievances Under the 2008-2013 NMFA and Disqualification of the Grievance Committee Members

The 2008-2013 NMFA contains a grievance procedure under which a grievance or question concerning the interpretation of the NMFA is referred to a permanent National

---

[2] ABF is one of several employer signatories to the 2008-2013 NMFA aside from the YRCW Companies.

-3-

Grievance Committee. The National Grievance Committee has an equal number of employer and union representatives, has the power to issue binding grievance decisions by majority vote, and is required to adopt rules of procedure. (NMFA, Art. 8) In the event of a deadlock, the grievance is to be referred automatically to the National Review Committee, consisting of the Chairman of TNFINC or his/her designee and the Executive Director of TMI, or his/her designee, for resolution. (*Id.*) If the National Review Committee can not break the deadlock, the President of the employer involved and the Chairman of TNFINC have thirty business days to attempt to resolve the matter. (*Id.*)

The National Grievance Committee Rules of Procedure for the 2008-2013 term state at Article II, Paragraph (H):

> Neither an Employer nor Union representative may participate as a panelist on the National Grievance Committee to decide cases involving their respective company or local union.

The National Grievance Committee Rules of Procedure for the 2008-2013 term further state at Article V:

> No Union or Employer representative shall serve in any capacity on a Committee or Panel provided for under these Rules in hearing a case in which they were directly involved.

The National Grievance Committee Rules of Procedure apply to both the National Grievance Committee and the National Review Committee established by the 2008-2013 NMFA. By operation of these Rules of Procedure, neither the currently constituted National Grievance Committee nor the National Review Committee can properly sit to hear the ABF Grievance.

Because the Grievance brought by ABF concerning the separate agreement made by the YRCW Companies through TMI, and the additional separate agreement made directly by the YRCW Companies with the union defendants, would be heard and resolved by a committee

- 4 -

comprised of employees and agents for TMI and the YRCW Companies — the latter being principal competitors of ABF and principal beneficiaries of the very Amendments about which ABF now complains — no committee can be constituted under the National Grievance Committee Rules of Procedure to hear ABF's Grievance against IBT, TNFINC, TMI and the YRCW Companies because they are all "involved in" the ABF Grievance.

Every Teamster or union member of the National Grievance Committee is involved with the ABF Grievance as well, because ABF seeks to set aside their Amended agreements with the YRCW companies, as well as damages from the Defendants — which could thereby detrimentally affect the members of each of the respective unions represented on the National Grievance Committee. So they, too, are all disqualified from hearing the matter by operation of the quoted Rules of Procedure.

The two members of the National Review Committee are the chair of TNFINC and the President of TMI. The former negotiated all three offending Amendments and the latter negotiated Amendment No. 1 — and the chair of TNFINC is directly involved in the refusal to extend the Amendments to ABF — so they, too, are directly "involved in" the matter and disqualified from hearing it.

Given the incapacity of any member of either the National Grievance Committee or the National Review Committee to hear the ABF Grievance, each of which has the authority to issue a binding decision respecting the Grievance, the Court is empowered to select and appoint a third party neutral tribunal to hear and decide the Grievance, so as to give effect to the intent of the parties to have an arbitral forum try to resolve national grievances in the first instance.

## II. ARGUMENT

Section 301 of the LMRA invests federal district courts with jurisdiction over suits for breach of collective bargaining agreements between an employer and a labor union, regardless of the amount in controversy or the citizenship of the parties. In *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448 (1957), the Supreme Court made clear that Congress intended this provision to be more than jurisdictional in nature, and instead, that the provision authorized the federal courts to fashion a body of common law related to the enforcement of collective bargaining agreements, including, specifically, arbitration agreements.

### A. The Law Applicable to Binding Arbitration Under Collective Bargaining Agreements Applies To The National Grievance Committee and to the National Review Committee

Where a joint union-employer committee has the authority to issue a final and binding award interpreting or enforcing a labor contract, the committee is treated as an arbitration panel under Section 301 of the Labor Management Relations Act and any award it issues is enforceable as an arbitration award even though the word "arbitration" does not appear in the collective bargaining agreement, *Gen. Drivers Local 89 v. Riss & Co.*, 372 U.S. 517 (1963), because "the policy of the Labor Act 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.'" *Id.* at 519 (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 566 (1960)).

Accordingly, the Eighth Circuit has routinely applied the law of arbitration, as it has developed under Section 301 of the LMRA, to the procedures of joint union-management dispute settlement committees. *Warren v. In'l Bhd. of Teamsters*, 544 F.2d 334 (8th Cir. 1976), for example, concerned the procedures of a Joint State Committee established by a predecessor to the 2008-2013 NMFA, that had the authority to settle a dispute by majority vote and whose decision was final and binding on the parties. *Id.* at 341. The court found that these procedures,

"though not called arbitration, are of the type to which the holdings of *Vaca* . . . and *Hines* . . . fully apply.[3] The actions of such joint committees have consistently been considered just as final and binding as if the actions had been called arbitration." *Id.* at 340 (citing *Riss & Co., supra*, *Humphrey v. Moore*, 375 U.S. 335 (1964), and *Cannon v. Consol. Freightways Corp.*, 524 F.2d 290 (7th Cir. 1975)).

In *Tongay v. Kroger Co.*, 860 F.2d 298 (8th Cir. 1988), the Court of Appeals observed that "[c]ommittees convened in accordance with the terms of a collective bargaining agreement grievance procedure are 'a substitute for, and not simply a precursor of, arbitration.'" 860 F.2d at 300 (quoting *Early v. Eastern Transfer*, 699 F.2d 552, 559 (1st Cir. 1983)). In *Early*, the court had also observed that "[t]he Supreme Court has consistently treated the decisions of joint committees and of arbitrators identically." 699 F.2d at 559 (citations omitted). *See also Local Union No. 36, Sheet Metal Workers Int'l Ass'n v. Atlas Air Conditioning Co.*, 926 F.2d 770 (8th Cir. 1991). Similarly, in *International Longshoremen's Ass'n v. Cateneo Inc.*, 990 F.2d 794 (4th Cir. 1992), the Court of Appeals applied the law as it had developed under LMRA Section 301 in holding that the district court properly applied Maryland's 30-day statute of limitations for vacating an arbitration award, in barring the defendant's defenses to enforcement of a grievance decision by a joint employer-union grievance committee. *Id.* at 799–800. In so doing, the Sixth Circuit relied, *inter alia*, on the decisions of the Eighth Circuit in *Tongay* and *Atlas Air Conditioning, supra*.

---

[3] *Vaca v. Sipes*, 386 U.S. 171, 179 (1967), held that when a union has breached its duty of fair representation to the union member, that member may pursue a breach of labor contract claim directly against the employer under LMRA Section 301. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562–63 (1976), held that a court could ignore the finality of a contract arbitration provision in an employee's suit for breach of contract under Section 301 where the union had breached its duty of fair representation.

Significantly, in both the *Tongay* and *Early* decisions, the Courts of Appeal reached their conclusions that the law of arbitration under LMRA Section 301 applied to the grievance committee decisions notwithstanding that in both cases the contract provided further procedures (in those cases, binding arbitration) if the committee deadlocked. What was essential, in the courts' view, was that the committees had authority to issue a binding decision. Indeed, in *Atlas Air Conditioning, supra,* the Eighth Circuit treated the Local Joint Adjustment Board decision — and even referred to it — as an arbitration award (and therefore denied the employer's defenses to enforcement as untimely), notwithstanding that the Adjustment Board's decision was non-final, in that the employer could have appealed even a unanimous Local Board decision to a National Panel.[4]

It is clear that the National Grievance Committee — and the National Review Committee if the National Grievance Committee should deadlock — both have the authority under the 2008-2013 NMFA to settle labor contract disputes such as the ABF Grievance and issue a decision that is final and binding on the parties. Specifically, the 2008-2013 NMFA states in relevant part, at Article 8:

> Section 1.
>
> All grievances or questions of interpretations arising under this National Master Freight Agreement or Supplemental Agreements thereto shall be processed as set forth below.
>
> . . .

---

[4] Under the collective bargaining agreement at issue in *Atlas Air Conditioning*, "'a contractor who was not a party to the labor agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board, including a unanimous decision, and request a [National] Panel hearing. . . .'" *Id.* at 771 (quoting the collective bargaining agreement).

(b) Any matter which has been referred pursuant to Section 1(a) above, or any question concerning the interpretation of the provisions contained in the National Master Freight Agreement, shall be submitted to a permanent National Grievance Committee which shall be composed of an equal number of employer and union representatives. . . . . *If the National Grievance Committee resolves the dispute by a majority vote of those present and voting, such decisions shall be final and binding upon all parties* [emphasis added].

Cases deadlocked by the National Grievance Committee shall be referred as provided in Section 2(b) below. Procedures relating to such referrals shall be included in the Rules of Procedure of the National Grievance Committee.

. . .

No Employer signatory to this Agreement shall be permitted to have its own grievance procedure.

Section 2.

. . .

(b) All grievances deadlocked at the National Grievance Committee shall be processed as set forth below.

1. All such deadlocked grievances shall be automatically referred to the National Review Committee, which shall consist of the Chairman of TNFINC, or his/her designee and the Executive Director of TMI, or his/her designee. *The National Review Committee shall have the authority to resolve any such deadlocked case* by review of the record presented to the National Grievance Committee or by rehearing the case, or by referring the case to a subcommittee of either the Joint National Negotiating Committee or the appropriate Supplemental Negotiating Committee to negotiate a recommended resolution of the case. The subcommittee of the Negotiating Committee to which the case was referred must report its recommendation or deadlock to the National Review Committee for resolution. Unless the National Review Committee in writing mutually agrees otherwise, said Committee shall have a period of 15 days (excluding Saturdays, Sundays and holidays) from the date of the National Grievance Committee deadlock to resolve the case. *The decision of the National Review Committee shall be final and binding* [emphasis added].

2. In the event the National Review Committee is unable to resolve the deadlock, the President of the Employer involved and the Chairman of TNFINC shall have 30 additional days (excluding Saturdays, Sundays and holidays), from the final day of consideration by the National Review Committee to attempt to resolve the case. The TMI and TNFINC representatives on the National Review Committee shall be responsible for notifying the President of the Employer involved and the

>Chairman of TNFINC of the final day of consideration by the Committee of the deadlocked grievance. . . .

These committees, therefore, are a substitute for binding arbitration, and the law of arbitration that has developed under Section 301 of the LMRA for enforcement of agreements to arbitrate applies to them with equal force as it would to an arbitration panel. *See Morris v. Werner-Continental, Inc.*, 466 F.2d 1185, 1190–91 (6th Cir. 1972).

### B. A Court Will Appoint an Arbitrator When a Qualified Individual Is Not Available to Serve as Provided in the Agreement

In the instant case, the members who constitute the committee designated by the parties to hear the ABF Grievance — that is, the National Grievance Committee established by the 2008-2013 NMFA — are unable to serve. They are disqualified from serving by application of the Committee's own Rules of Procedure. The National Grievance Committee Rules of Procedure use broad language to disqualify Committee members from "decid[ing] cases *involv[ing]* their respective company or local union." National Grievance Committee Rules of Procedure, Article II, ¶ H (emphasis added). Similarly, Article V of those Rules state that "No Union or Employer representative shall serve in any capacity on a Committee or Panel provided for under these Rules in hearing a case in which they were directly *involved*." As set forth above at pages 3 to 5, the committee members themselves, or the companies that employ them or the unions they represent, are all (or at best nearly all), "involved in" the ABF Grievance because they either participated directly in or are parties to the conduct that ABF asserts constitutes multiple violations of the contract, or they will be adversely or otherwise affected by the relief ABF seeks as a remedy for those violations.

Under a wide variety of circumstances, courts have done whatever is reasonably necessary to appoint qualified arbitrators to ensure that the intent of the parties in agreeing to arbitrate will not be frustrated by the lack of a qualified arbitrator.

For example, in *National American Insurance Co. v. Transamerica Occidental Life Insurance Co.*, 328 F.3d 462 (8th Cir. 2003), a member of a three-member arbitration panel resigned for health reasons after the case had progressed through discovery proceedings for one year. The Eight Circuit affirmed the district court's decision appointing an arbitrator to replace the one who had resigned. *Id.* at 465. *See also Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 132 (2d Cir. 2010) (affirming the district court's decision to reappoint the newly healthy former arbitrator or "require a replacement in the event he declined").

In *Bell Aerospace Co. Division of Textron, Inc. v. Local 516, Int'l Union, United Automobile Workers*, 500 F.2d 921 (2d Cir. 1974), an arbitrator had issued an award that was too contradictory to enforce. In view of the arbitrator's failure, the Court of Appeals held that a new arbitrator should be appointed, and directed the district court to appoint an arbitrator if the parties could not select one for a new hearing on the grievance. *Id.* at 924–25. Similarly, in *Bethlehem Mines Corp. v. United Mine Workers*, 494 F.2d 726 (3d Cir. 1974), where the collective bargaining agreement required the parties to agree on the selection of an arbitrator but they could not do so, the Court of Appeals upheld the decision of the district court to establish a selection procedure, involving the alternate striking of names from a list of three arbitrators to be obtained from the Federal Mediation and Conciliation Service. *Id.* at 739.

Similar decisions have been reached in cases where the designated arbitrator was unable to serve for reasons other than health. For example, in *Astra Footwear Industry v. Harwyn International, Inc.*, 442 F. Supp. 907 (S.D.N.Y. 1978), *aff'd mem.*, 578 F.2d 1366 (2d Cir. 1988), the court agreed to appoint an arbitrator to resolve a commercial dispute where the arbitrator designated in the agreement — the New York Chamber of Commerce — was unable to serve because it had ceased to arbitrate disputes. *Id.* at 910. In a dispute over legal fees, the Colorado

Bar Association, which had been designated in the agreement as the arbitrator, declined to serve. The court held that this did not affect the enforceability of the agreement and made it clear that the court was available to appoint a new arbitrator (although that had not become necessary in the circumstances of the case). *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991). *See also McMullen v. Meijer*, 166 Fed. Appx. 164, 169 (6th Cir. 2004) (affirming district court appointment of substitute arbitrator in place of arbitrator chosen through process found to be biased).

Several of the decisions cited arise under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), which does not apply to "contracts of employment of . . . workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. However, as the Supreme Court noted in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29 (1987), "the federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act, 1947, 61 Stat. 145, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws." *Id.* at 40 n.9. More recently, in *Granite Rock Co. v. International Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010), the Supreme Court, relying heavily on FAA precedent in holding that the issues of contract formation and the date on which it occurred were properly to be considered by a court and not an arbitrator, explained its analysis as follows: "We, like the Court of Appeals, discuss precedents applying the FAA because they employ the same rules of arbitrability that govern labor cases." *Id.* at 2857 n.6 (citing *AT&T Techs, Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)).

Lower federal courts have repeatedly cited to the principle of *Misco*, now emphasized by *Granite Rock*, applying FAA precedent to LMRA Section 301 actions. *See, e.g., MidAmerican Energy Co. v. Int'l Bhd. of Elect. Workers Local 499*, 345 F.3d 616 (8th Cir. 2003), where the employer sought to vacate an arbitration award on the grounds that it was procured by fraud. Explaining its heavy reliance on FAA precedent, the court stated: "Although the Federal Arbitration Act does not govern labor cases, it does inform our search for the federal common law that governs judicial review of arbitration awards in labor cases." *Id.* at 621.

Section 5 of the FAA provides that:

> . . . if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Applying Section 5 of the FAA, courts routinely appoint a different arbitrator "where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute." *McGuire, Cornwell & Blakey*, 771 F. Supp. at 320. *See also Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000); *Astra Footwear Indus.*, 442 F. Supp. at 910, *aff'd mem.*, 578 F.2d 1366; *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1365–66 (N.D. Ill. 1990); *Haw. Teamsters & Allied Workers, Local 996 v. Honolulu Rapid Transit Co.*, 343 F. Supp. 419, 425 (D. Haw. 1972).

In the instant matter, the members of the National Grievance Committee can not, under the Committee's own Rules of Procedure, arbitrate the dispute they would otherwise have final and binding authority to resolve, nor can the National Review Committee. Consequently, the court may and should appoint a third party neutral tribunal to serve in their stead.

## III. CONCLUSION

For all the foregoing reasons, plaintiff ABF Freight System, Inc. respectfully petitions this Court for an order appointing a neutral tribunal to substitute for the disqualified and therefore unavailable members of the National Grievance Committee established by the 2008-2013 National Master Freight Agreement, to decide the underlying ABF Grievance.

Dated:  Fayetteville, Arkansas
        November 1, 2010

                                    Respectfully submitted,

                                    LITTLER MENDELSON, P.C.

                                    By:  _____
                                         Robert F. Millman
                                         Robert C. Long
                                         Gerald T. Hathaway
                                         R. Scott Summers

                                    One Steele Plaza
                                    3739 Steele Boulevard
                                    Suite 300
                                    Fayetteville, AR 72703
                                    Telephone: 479-582-6100

                                    *Attorneys for Plaintiff ABF Freight System, Inc.*

Firmwide:96247466.6 058852.1004