IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| ABF FREIGHT SYSTEM, INC., )<br> )<br>       **Plaintiff,** )<br> v. )<br> )<br>INTERNATIONAL BROTHERHOOD )<br>OF TEAMSTERS, et al., )<br> )<br>       **Defendants.** ) | No. 2:10-CV-2165 JLH |

**MEMORANDUM IN SUPPORT OF YRC'S MOTION FOR
EXPEDITED RESOLUTION OF ITS MOTION TO DISMISS**

**Preliminary Statement**

Plaintiff ABF Freight System has filed this lawsuit challenging the propriety of amendments to a labor agreement between defendants YRC, Inc., New Penn Motor Express, Inc., and USF Holland, Inc., (together, "YRC") and defendant International Brotherhood of Teamsters, YRC's employees' union. As shown in YRC's motion to dismiss (filed concurrently with this motion), Plaintiff's complaint is wholly without merit.

For YRC, however, prevailing in this lawsuit is not enough. It needs to prevail quickly. It is no secret that YRC is in financial distress, and the amendments to its labor agreement with the Union are a key element of YRC's effort to secure new capital from its lenders and to restructure its substantial existing debt load. The mere pendency of this lawsuit seeking to nullify the amendments to the labor agreement—regardless of the suit's lack of merit—could substantially hamper YRC's ongoing effort to convince its lenders to invest more into YRC. Further, if YRC does not secure new financing and restructure its debt load by December 31,

2010, the amendments to the labor agreement become void pursuant to their own terms, which is the very outcome that Plaintiff, YRC's biggest unionized competitor, is seeking here. This would exacerbate YRC's already-stressed liquidity position and might ultimately force YRC to consider court-assisted restructuring alternatives.

Against this background, anything but the most expeditious resolution of YRC's motion to dismiss may result in the very thing that Plaintiff ultimately seeks—the invalidation of the amendments to YRC's labor agreement—without any action by the Court at all. This result would be manifestly unfair: A party should not effectively lose a lawsuit because of the mere passage of time. Accordingly, YRC respectfully moves the Court to enter an order expediting both the briefing of YRC's motion to dismiss and the Court's ruling on that motion.

## **Background**

YRC is one of the largest trucking and freight companies in the world. (Taylor Decl. ¶ 2[1]) It serves more than 350,000 customers in manufacturing, wholesaling, retailing, and government, and it employs approximately 36,000 people.[2] (*Id*. at ¶ 3) In 2009, YRC's revenues for its U.S. business were approximately $4.9 billion. (*Id*. at ¶ 4)

In late 2007, the United States economy entered a severe recession, and that downturn affected YRC significantly. YRC's operating revenue fell by $680.1 million (7.1%) from 2007 to 2008 and again by $3.66 billion (40.9%) from 2008 to 2009. (Taylor Decl. ¶ 7) Putting aside

---

[1] Citations to "Taylor Decl." in this memorandum refer to the Declaration of Sheila Taylor, YRC Worldwide's Chief Financial Officer, which is attached as Exhibit 2 to YRC's motion to dismiss, filed today.

[2] The financial statistics discussed in this section are from YRC's parent company, YRC Worldwide, Inc., which is not a defendant in this lawsuit. (Taylor Decl. ¶ 2) However, the YRC defendants comprise approximately 90% of YRC Worldwide's business, so the discussion accurately reflects what is at stake here. (*Id*.)

2

one-time impairment charges, YRC's operating income also was significantly lower in 2009 over 2008, showing an operating *loss* of $884 million in 2009. (*Id.*)

Despite reports in the popular press of the general economy beginning to recover, YRC is still suffering. In the first nine months of 2010, for example, YRC recorded a net loss of $345.4 million. (Taylor Decl. ¶ 6) YRC's independent auditor has concluded that substantial doubt exists about YRC's ability to remain a "going concern." (*Id.* at ¶ 9) As YRC stated in its quarterly filing last week:

> We do not expect that we will have sufficient liquidity to pay deferred amounts under the Credit Agreement and CDA, make contributions to multi-employer pension funds in amounts greater than set forth in the MOU or lose wage, benefit and work rule concessions in 2011. As a result, we are in discussions with all of our stakeholders and we are exploring the restructuring and possible recapitalization of these obligations, which may include the issuance of a significant amount of additional equity. A failure to address these obligations prior to the dates that the deferrals would end or the multi-employer pension fund contributions would begin, or the termination of the wage, benefit and work rule concessions in the MOU, would materially and adversely affect our liquidity and our ability to continue to operate our business in the ordinary course.

(*Id.* at ¶ 8).

In an attempt to survive, YRC has negotiated with its employees' union for three amendments to the terms of their labor agreement. (Compl. ¶¶ 58-64) The amendments will save YRC $590-600 million annually. (Taylor Decl. ¶ 12) However, the amendments become void by their own terms (absent an extension) unless YRC restructures its debt and secures new financing by December 31, 2010. (*Id.* at ¶ 13)

As explained in the attached declaration of Sheila Taylor, YRC Worldwide's Chief Financial Officer, the mere threat that the amendments to the labor agreement (and the attendant costs savings for YRC) may be invalidated will hinder YRC's ability to complete its financial restructuring. (Taylor Decl. ¶¶ 16-17) Banks and other lenders may be hesitant to invest additional funds into YRC if there is even a possibility that YRC's labor costs will be higher than

planned. (*Id.*) And, if YRC cannot complete its financial restructuring, the company's liquidity crisis will become even more acute and might force YRC to consider court-assisted restructuring alternatives. (*Id.*)

As a result, the prompt resolution of this lawsuit is critical, for as long as the lawsuit remains pending, it will hinder YRC's restructuring efforts. Market analysts who follow YRC's situation agree. For example, one such analyst recently noted that this lawsuit, if not timely resolved, "makes YRC's second annual out-of-court restructuring more difficult, increasing the chance of YRC going out of business." (Ex. 1, Stifel Nicolaus Report at 1) Thus, YRC has filed this motion seeking to expedite the briefing and resolution of its motion to dismiss, so that the mere pendency of the lawsuit, regardless of its resolution, does not harm YRC.

## Argument

"For cause shown," this Court may shorten the time for filing responses and replies to motions. W.D. Ark. R. 7.2(b). It may also expedite the time for rulings under the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North America Co.*, 299 U.S. 248, 254 (1936); *see also Hill v. Porter Memorial Hosp.*, 90 F. 3d 220, 224 (7th Cir. 1996) (it is within a district court's discretion to expedite a case).

In the preliminary injunction context, courts recognize that court action is warranted to prevent a real risk of a company requiring restructuring or other similar remedies. *See, e.g.*, *Versacold USA, Inc. v. Inland American Brooklyn Park Atlas, LLC*, No. 09-2669, 2009 WL 3617544 (D. Minn. Oct. 29, 2009) (irreparable injury demonstrated where there was a threat of bankruptcy absent preliminary injunction); *B & D Land and Livestock Co. v. Conner*, 534 F. Supp. 2d 891 (N.D. Iowa 2008) (finding irreparable injury and granting preliminary injunction where passage of time posed credible threat to company of bankruptcy); *Cedar-Riverside*

*People's Center v. Minnesota Dept. of Human Services*, No. 09-768, 2009 WL 1955440 (D. Minn. July 6, 2009) (finding irreparable harm where one plaintiff risked bankruptcy and the others risked being forced to cease operations). For instance, in *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), the Supreme Court held that a preliminary injunction was merited on the basis that, absent such relief, the defendant businesses would suffer a substantial loss of customers, business, and perhaps even bankruptcy. As the Supreme Court held, "Certainly the latter type of injury [bankruptcy] sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless." 422 U.S. at 932. If ordering preliminary relief is warranted in circumstances where irreparable harm would occur through the passage of time, plainly the lesser remedy of expediting a briefing schedule and resolution of a motion is also proper in that circumstance—particularly where preliminary relief would not stop the irreparable harm.

Such is the case, here. YRC has only until the end of the year to restructure its debt and secure new financing. This out-of-court restructuring will be difficult in the face of any uncertainty over the resolution of this lawsuit. Accordingly, YRC's motion to dismiss should be briefed and resolved as quickly as possible.

## **Conclusion**

Plaintiff's lawsuit, despite its complete lack of legal merit, threatens YRC's ability to obtain new financing merely by having been filed. (Indeed, given the complaint's lack of merit, that may be the real reason Plaintiff—YRC's principal unionized competitor—filed it.) If the validity of the amendments to YRC's labor agreement is at all uncertain, YRC may be unable to negotiate a restructuring plan by the end of this year, which in turn will cause the labor agreement amendments to become void. In light of these circumstances, YRC respectfully requests that this Court issue an order setting the following briefing schedule on YRC's motion

to dismiss: (1) By November 24, 2010, Plaintiff must file its response to YRC's motion to dismiss; (2) By December 3, 2010, YRC must file its reply in support of its motion to dismiss. Additionally, YRC respectfully requests that the Court resolve the motion to dismiss with as much haste as possible.

Dated: November 16, 2010

Respectfully submitted,

/s/ Nicholas H. Patton

Nicholas H. Patton
AR Bar No. 63035
PATTON, TIDWELL & SCHROEDER LLP
4605 Texas Blvd. – P.O. Box 5398
Texarkana, Texas 75503
(903) 792-7080
(903) 792-8233 (fax)

*Counsel for YRC, Inc., New Penn Motor Express, Inc., and USF Holland, Inc.*

Of Counsel:

John F. Hartmann, P.C.
Joshua Z. Rabinovitz
Wendy Netter Epstein
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, Illinois 60654

John S. Irving
Edward Holzwanger
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

# CERTIFICATE OF SERVICE

  I hereby certify that on this 16th day of November 2010, I electronically filed the foregoing with the Clerk of the court using the CM/ECF System which will send notification of such filing to the following:

COUNSEL FOR PLAINTIFF ABF FREIGHT SYSTEM, INC.:

| | |
|---|---|
| Robert L. Jones III<br>CONNER & WINTERS<br>211 East Dickson Street<br>Fayetteville, AR 72701<br>bjones@cwlaw.com | Robert Millman<br>LITTLER MENDELSON PC<br>2049 Century Park East – Suite 500<br>Los Angeles, CA 90067<br>rmillman@littler.com |
| Gerald Hathaway<br>LITTLER MENDELSON PC<br>900 Third Avenue – 8th Floor<br>New York, NY 10022<br>ghathaway@littler.com | R. Scott Summers<br>LITTLER MENDELSON PC<br>3739 N. Steele Blvd. – Suite 300<br>Fayetteville, aR 72703<br>vdisney@littler.com |
| Robert Long<br>LITTLER MENDELSON PC<br>21 E. State Street – Suite 1600<br>Columbus, OH 43215<br>rlong@littler.com | |

COUNSEL FOR DEFENDANTS INTERNATIONAL BROTHERHOOD OF TEAMSTERS; TEAMSTERS NATIONAL FREIGHT INDUSTRY NEGOTIATING COMMITTEE; TEAMSTERS LOCAL UNION 373 and TEAMSTERS LOCAL UNION 878:

| | |
|---|---|
| Samuel Morris<br>GODWIN, MORRIS, LAURENZI<br> BLOOMFILED, PC<br>50 N. Front Street – Suite 800<br>Memphis, TN 38103<br>smorris@gmlblaw.com | Melva Harmon<br>MELVA HARMON ATTORNEY AT LAW<br>111 Center Street<br>Suite 1200<br>Little Rock, AR 72201<br>melvaharmon@sbcglobal.net |

                   /s/ Nicholas H. Patton
                   Nicholas H. Patton