**IN THE UNITED STATES DISTRICT COURT**
WESTERN DISTRICT OF ARKANSAS
FORTH SMITH DIVISION

ABF FREIGHT SYSTEM, INC.                    *
                                            *
                  Plaintiff                 *
                                            *
V.                                          *          NO: 2:10CV02165   SWW
                                            *
INTERNATIONAL BROTHERHOOD                   *
OF TEAMSTERS, ET AL.                        *
                                            *
                  Defendants

**<u>ORDER</u>**

Plaintiff ABF Freight System, Inc. ("ABF") commenced this lawsuit under § 301 of the

Labor Management Relations Act ("LMRA") against YRC, Inc., New Penn Motor Express, Inc.,

and USF Holland, Inc. (collectively, "YRC defendants"); the International Brotherhood of

Teamsters ("IBT"), Teamsters National Freight Industry Negotiating Committee ("TNFINC"),

and  Teamsters Local Unions 373 and 878 (collectively, "union defendants"); and Trucking

Management, Inc. ("TMI"), alleging that defendants violated a collective bargaining agreement

("CBA").

The YRC defendants filed a motion to dismiss for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (docket entry #25), asserting

that ABF lacks standing to bring its claims, and TMI and the union defendants filed separate

motions under Rule 12(b)(1) (docket entries #51, #56).  On December 16, 2010, the Court

conducted an evidentiary hearing on defendants' motions.[1]  All parties appeared through

_____

[1]Before the hearing, the Court reviewed ABF's responses in opposition to defendants'
motions (docket entries #63, #68, #69) and defendants' replies in support of their motions

1

counsel, and the Court received evidence consisting of documents attached to the complaint and filed in support of and in opposition to defendants' motions to dismiss.   At the conclusion of the hearing, the Court stated findings of fact and conclusions of law and granted defendants' motions to dismiss for lack of subject matter jurisdiction.   This order augments and reaffirms the findings of fact and conclusions of law made from the bench.

## I.

"A plaintiff has the burden of establishing subject matter jurisdiction, for which standing is a prerequisite." *Jones v. Gale*, 470 F.3rd 1261, 1265 (8th Cir. 2006).  Because defendants' motions go beyond the face of the complaint and attack the existence of subject matter jurisdiction in fact, the Court may consider matters outside the pleadings without converting the motions to dismiss into motions for summary judgment. *See Osborn v. United States*, 918 F.2d 724, 729  (8th Cir.1990).   The Court  "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . . [N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude [the court] from evaluating for itself the merits of jurisdictional claims." *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).   Once the evidence is submitted, the Court must decide the jurisdictional issue unless it is "'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'"  *Osborn*, 918 F.2d at 730(quoting *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir.1986)).

---

(docket entries #72, #75, #75).

## II.

ABF and the YRC defendants are  freight trucking companies with employees who are members of local unions affiliated with IBT.   The YRC defendants,  "ABF's principal unionized competitors,"[2]  are subsidiaries of nonparty YRC Worldwide, Inc.[3]   Defendant TNFINC is a bargaining agent for IBT local unions, and defendant TMI is a bargaining agent for trucking industry employers that join TMI's multi-employer bargaining group.   Periodically, TNFINC and TMI negotiate the terms of a  master CBA known as the National Master Freight Agreement ("NMFA"), which is applicable to IBT local unions and employers that are bargaining members of TMI.   Employers who are not TMI bargaining members may choose to adopt terms included in the NMFA.

According to the complaint allegations, ABF, the  YRC defendants, and the union defendants are all parties to a single CBA: the 2008-2013 NMFA.  ABF alleges that defendants negotiated three amendments to the 2008-2013 NMFA that give the YRC defendants "an improper competitive advantage"[4] and violate provisions of the NMFA that require employers to maintain standards of employment in effect at the time of the agreement[5] and prohibit employers

---

[2]Compl., ¶ 115.

[3]*See* docket entry #26, Ex. #2, (Taylor Dec.).

[4]Compl., ¶ 137.

[5]Article 6, Section 1 of the 2008-2013 NMFA, entitled "Maintenance of Standards" provides:

> The Employer agrees, subject to the following provisions, that all conditions of employment in his/her individual operation relating to wages, hours of work, overtime differentials and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, and

from entering agreements with employees that conflict with terms of the agreement.[6]   By way of relief, ABF seeks a declaration that the aforementioned amendments are null and void and a money judgment against all defendants.[7]   Alternatively, ABF asks the Court to appoint a neutral tribunal to resolve its claims.

ABF asserts that the Court has subject matter jurisdiction pursuant to § 301 of the LMRA, which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a).

Defendants move to dismiss ABF's complaint pursuant to Rule 12(b)(1), arguing that the parties entered separate CBA's and that ABF lacks standing to enforce a contract to which it is

---

> the conditions of employment shall be improved whenever specific provisions for improvement are made elsewhere in this Agreement.

Docket entry #26, Ex. #1, at 42.

[6]Article 6, Section 2 of the 2008-2013 NMFA, entitled "Extra Contract Agreements" provides:

> The Employer agrees not to enter into any agreement or contract with its employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such agreement shall be null and void.

Docket entry #26, Ex. #1, at 44.

[7]ABF alleges that it "is entitled to damages because of the breach by all defendants of the NMFA in an amount estimated to be, for the period of time from the first violation through March 31, 2013, the expiration date of the 2008-2013 NMFA, Seven Hundred Fifty Million Dollars ($750,000,000).   Compl. ¶ 139.

4

not a party.

## III.

Without question, a plaintiff must have standing to sue under § 301 for violation of a contract.  *See Wooddell v. International Broth. of Elec. Workers*, 71  502 U.S. 93, 99 n.4, 112 S. Ct. 494, 498 n.4 (1991)(noting that a plaintiff must have "personal standing" to bring suit under § 301).   ABF cannot have standing unless it has rights under the contract that it seeks to enforce and injuries flowing from breach of its *own* contractual relationship.[8]

The contract that ABF seeks to enforce is the 2008-2013 NMFA negotiated and signed by TNFINC, on behalf of IBT local unions, and TMI, on behalf of its bargaining members which at the time of signing included YRC, Inc. and USF Holland, Inc.  To avoid confusion, the Court will refer to this contract as "the YRC agreement."

ABF contends that by operation of an Interim Agreement it signed with TNFINC, it automatically became a party to the YRC agreement.  On January 30, 2008, ABF and TNFINC signed an Interim Agreement which states that ABF will maintain the wages, benefits and working conditions set forth in the 2003-2008 NMFA and that, following ratification of the 2008-2013 NMFA, ABF will implement 2008-2013 NMFA standards.[9]  The Interim Agreement further provides that upon ratification of the 2008-2013 NMFA, the Interim Agreement would

---

[8]The "irreducible constitutional minimum of standing" consists of three elements: (1) the plaintiff must have suffered an "injury in fact," an actual or imminent concrete and particularized invasion to a *legally protected* interest; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) the injury must be redressable by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992).

[9]*See* Compl., Ex. #2 (Interim Agreement).

terminate and ABF would become a party and signatory to the 2008-2013 NMFA.

The plain language of the Interim Agreement states that it is an agreement between ABF and TNFINC.[10] Neither the YRC defendants nor TMI signed the Interim Agreement, and the record contains no evidence that TMI or its bargaining members (YRC, Inc. or USA Holland, Inc.) knew about the Interim Agreement at the time it was negotiated.

ABF offers no evidence that TMI or its bargaining members assented by conduct or otherwise to ABF becoming a party to the YRC agreement. Fundamental principles of contract law require that all parties to a contract agree to any modification of the agreement. *See Van Camp v. Van Camp,* 333 Ark. 320, 323, 969 S.W.2d 184, 186 (1998)(citing *Leonard v. Downing*, 246 Ark. 397, 438 S.W.2d 327 (1969)); *see also Barrett v. Safeway Stores, Inc.,* 538 F.2d 1311, 1313 n.2 (8th Cir. 1976)(noting that a collective bargaining agreement in dispute under § 301 is governed by federal substantive law, but a court may resort to principles of state contract law if compatible with the purposes of § 301.

Furthermore, the YRC agreement states that employers covered under the agreement include "individual employers who become signator to this Agreement and Supplemental Agreements *as hereinafter set forth*[,]"[11] and ABF presents no evidence that it signed the YRC agreement.

Nor does the course of dealing among the parties, outlined below, indicate that ABF was

---

[10]The opening paragraph of the Interim Agreement states, "The undersigned Employer hereby agrees and stipulates with the Teamsters National Freight Negotiating Committee (hereinafter the Union) as follows:" Compl., Ex. #2.

[11]Docket entry #26, Ex. #1(B)(2008-3013 NMFA, Art. I, Sec. 1)(emphasis added).

a party to the YRC agreement.[12]  *See Baton Rouge Bldg. and Const. Trades Council AFL-CIO v. Jacobs Constructors, Inc*., 804 F.2d 879 (5th Cir. 1986) (finding non-signatory local unions failed to show that the course of dealing with employer effectively modified a standard form collective bargaining agreement to include local unions as parties to the agreement; thus in absence of contractual relationship between local unions and employer, local unions did not have standing to sue).

- Prior to negotiations for the 2008-2013 NMFA, TMI served as the bargaining agent for ABF and the YRC defendants.  However, in 2007, ABF withdrew TMI's authority to represent it in collective bargaining negotiations and made clear that it would negotiate directly with IBT for a new CBA applicable only to ABF.

- On January 30, 2008, the day ABF signed the Interim Agreement, ABF and TNFINC signed four memoranda of understanding (MOU's), two of which provide that in the event that Yellow Roadway Corporation closes, ABF will not be bound by the grievance procedure mandated under the NMFA and will have use of non-union resources on terms different from those set forth in the 2008-2013 NMFA.[13] The record contains no evidence that the YRC defendants agreed to or knew about

_____

[12]ABF contends that much of its conduct prior to bringing this lawsuit amounts to inadmissible, pre-litigation settlement negotiations.  *See* docket entry #63, at 31-33.  Federal Rule of Evidence 408(a) provides in relevant part:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . . conduct or statements made in compromise negotiations regarding the claim . . . .

However, Rule 408(b) provides that "the rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)."  Here, evidence of ABF's course of conduct is offered to show that it is not a party to the YRC agreement and is not offered for the purposes prohibited under Rule 408(a).

[13]*Compare* docket entry #75, Ex. #1 (Smith Dec.), Exs. A, B (MOU's No. 1, No. 2) *with* docket entry #26, Ex. #1 (Smid. Dec.), Ex. C (NMFA), Article 8, Section 1; Article 29, Section 6; Article 3, Section 7.

the MOU's entered between ABF and TNFINC on January 30, 2008.

- In fall 2008, the YRC   Defendants experienced financial difficulties and approached  TNFINC about concessions.  After negotiations with the YRC defendants,  TNFINC approved concessions set forth in an agreement known as "the YRC Wage Reduction-Job Security Plan," and the agreement was eventually ratified by YRC employees.

- In December 2008,  ABF president Wesley B. Kemp ("Kemp") wrote  IBT president James P. Hoffa ("Hoffa"), stating in part as follows:

    We've reviewed the IBT/YRC Wage Reduction-Job Security Plan.  Most certainly, the current economic climate is taking a serious toll on every company. However, each company's circumstance is different, which warrants a different approach to best protect Teamster jobs in the further. *We would like to meet and develop a cost reduction plan tailored for ABF and its employees.*[14]

- By letter to Hoffa dated February 20, 2009, Kemp proposed modifications to ABF's CBA,  which differed significantly from the concessions obtained by the YRC defendants.[15]  An exchange of letters between ABF  and TNFINC  followed Kemp's proposed modifications:

    - By letter to Kemp dated March 6, 2009, TNFINC co-chairman Tyson Johnson ("Johnson") advised Kemp that his proposed modifications would not be considered unless standards developed by TNFINC and adopted in the YRC Wage Reduction-Job Security Plan  were followed.[16]

    - By letter to Johnson dated March 9, 2008, Kemp expressed disappointment that TNFINC rejected ABF's proposal.  Kemp's letter states: "[*Y]ou seem to be imposing an agreement on ABF that we had no role in negotiating*

---

[14]Docket entry #52, Attach. #1 (McCall Dec.), Ex. B(emphasis added).

[15]Docket entry #52, Attach. #1 (McCall Dec.), Ex. C.

[16]Docket entry #52, Attach. #1 (McCall Dec.), Ex. D.

*and which will damage ABF in the marketplace*."[17]

- By letter to Johnson dated April 7, 2009, Kemp advised, "*[W]e continue to find that terms of the YRC agreement inappropriate and unacceptable to ABF.*"[18]

- The YRC defendants' financial difficulties persisted, and TNFINC and the YRC defendants negotiated a second set of concessions.  After learning about the concessions, Kemp wrote Johnson, stating that ABF was experiencing financial problems and had too many competitors with lower labor costs.  Kemp proposed a meeting and stated: "Should IBT elect to ignore our appeals to engage in constructive dialogue concerning necessary contract changes, while continuing to give preference to the interests of our competitors . . . , we will have no choice but to pursue all options available to us."[19]

- On August 18, 2009, Kemp sent Johnson an outline of terms necessary for ABF to "gain parity with the YRCW Job Security Plan recently ratified by their employees." Docket entry #52, Attach. #1 (McCall Dec.), Ex. K.   But on August 31, 2009, Kemp sent Johnson a proposed MOU, setting forth wage and benefit concessions for ABF, which he acknowledged contained terms that were "*very different*" from YRC's.[20]

- On March 19, 2010, Kemp agreed to an audit of ABF's financial records.[21] Subsequently, ABF and TNFINC negotiated and entered a MOU entitled the ABF Freight System, Inc. Wage Reduction-Job Security Plan.[22]   However, ABF employees voted against the plan.

---

[17]Docket entry #52, Attach. #1 (McCall Dec.), Ex. E(emphasis added).

[18]Docket entry #52, Attach. #1 (McCall Dec.), Ex. F.(emphasis added).

[19]Docket entry #52, Attach. #1 (McCall Dec.), Ex. J.

[20]The differences noted by Kemp include that ABF employees would be compensated in cash rather than stock options.  Docket entry #52, Attach. #1 (McCall Dec.), Ex. L.

[21]Docket entry #52, Attach. #1 (McCall Dec.), Ex. R.

[22]Docket entry #52, Attach. #1 (McCall Dec.), Ex. S.

9

- The YRC defendants negotiated a third set of concessions, and Kemp requested that ABF participate in the negotiations, opining that all signatories to the NMFA must participate.[23]   Johnson responded that the 2008-2013 NMFA negotiated by TMI on behalf of the YRC defendants created a separate contract and bargaining unit from the contract and unit established by the labor agreement negotiated independently by ABF.[24]

Contrary to Kemp's position taken in previous communications to Johnson, that industry employers should receive concessions tailored to their individual circumstances, by letter to Johnson dated June 11, 2010, Kemp accused TNFINC of entering a "sweetheart deal" with the YRC defendants and stated that "the whole idea behind an industry standard agreement is to put all covered employers in the industry on an equal footing as far as wages, hours, and conditions of employment are concerned." [25]

As the Court stated from the bench at the conclusion of the December 16 hearing, it appears that when ABF determined that its direct bargaining attempts had failed, it wanted to jump back on the bandwagon with TMI and YRC.   However, ABF's  unequivocal decision to bargain independently in 2007, and its conduct over the course the following three years, demonstrate that ABF and TNFINC entered a CBA separate and apart from the YRC agreement.

ABF argues that even assuming it is not a party to the YRC agreement, it can enforce the contract as a third-party beneficiary.   According to ABF, it "has the contractual right to benefit from the single bargaining unit and contract language of Article [2], Section 4 and Article 31,

---

[23]Docket entry #52, Attach. #1 (McCall Dec.), Ex. T.

[24]Docket entry #52, Attach. #1 (McCall Dec.), Ex. U.

[25]Docket entry #52, Attach. #1 (McCall Dec.), Ex. V.

which would effectuate the intent of the NMFA."  Docket entry #63, at 29-30.   Article 2,

Section 4 of the NMFA provides that employees, unions, employers and associations covered

under the

 Master Agreement shall constitute one bargaining unit and contract."[26]  And Article 31 of the

NMFA provides: "*The parties* agree to become a part of a multi-employer, multi-union

bargaining unit established by the National Master Freight Agreement, and to be bound by the

interpretations and enforcement of this National Master Freight Agreement."[27]

A contract is actionable by a third party when there is substantial evidence of a clear

intention to benefit that third party.  *See Perry v. Baptist Health,* 358 Ark. 238, 247-248, 189

S.W.3d 54, 60 (2004).  The foregoing NMFA provisions clearly pertain to parties to the master

agreement, and ABF fails to point to language specifically indicating an intent to create

obligations enforceable by non-signatory employers.    The Court finds that ABF is not a third-

party beneficiary of the YRC agreement.

In sum, the Court finds that ABF has failed to show, by a preponderance of evidence, that

it has rights under the contract that it seeks to enforce.  Accordingly, the Court finds that ABF

lacks standing to bring this action and, consequently, that the Court lacks subject matter

jurisdiction to entertain ABF's claims.  *See Faibisch v. Univ. of Minn*., 304 F.3d 797, 801 (8th

Cir.2002)(holding "if a plaintiff lacks standing, the district court has no subject matter

jurisdiction").

---

[26]Docket entry #26, Ex. #1(B), at 15 (2008-3013 NMFA, Art. 2, Sec. 4).

[27]Docket entry #26, Ex. #1(B), at 124-125 (2008-3013 NMFA, Art. 31)(emphasis added).

For the reasons stated, defendants' motions to dismiss for lack of subject matter jurisdiction (docket entries #25, #51, #56) are GRANTED.  Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 20TH   DAY OF DECEMBER, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE