# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FORT SMITH DIVISION

ABF FREIGHT SYSTEM, INC.           *
                                   *
            Plaintiff              *
                                   *
V.                                 *
                                   *           NO: 2:10CV02165   SWW
INTERNATIONAL BROTHERHOOD          *
OF TEAMSTERS, ET AL.               *
                                   *
            Defendants

## <u>MEMORANDUM AND ORDER</u>

Plaintiff ABF Freight System, Inc. ("ABF") brings this action for violation of a collective bargaining agreement against YRC, Inc., New Penn Motor Express, Inc., and USF Holland, Inc. (collectively, "YRCW")[1]; the International Brotherhood of Teamsters ("IBT"), Teamsters Local Unions 373 and 878, and Teamsters National Freight Industry Negotiating Committee ("TNFINC") (collectively, the "Union"); and Trucking Management, Inc. ("TMI").  Before the Court is the Union's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (docket entries #109, #110) and YRCW's motion to dismiss pursuant to Rule 12(b)(6) (docket entries #111, #112), which is joined by TMI.  Also before the Court is a separate motion by TMI to dismiss ABF's first cause of action for lack of subject matter jurisdiction,  pursuant to Federal Rule of Civil Procedure 12(b)(1) (docket entries #113, #114). ABF has filed an omnibus response in opposition to Defendants' motions to dismiss (docket entry #117), and Defendants have filed replies (docket entries entry #127, #128, #129).  After careful consideration, and for reasons that follow, Defendants' motions to dismiss pursuant to

---

[1]Defendants YRC, Inc., New Penn Motor Express, Inc., and USF Holland, Inc. are subsidiaries of nonparty YRC Worldwide, Inc.  *See* Amend. Compl., ¶ 11.

Rule 12(b)(6) are granted, and TMI's motion to dismiss pursuant to Rule 12(b)(1) is denied.

## I.  Background

The following facts are taken from the amended complaint (docket entry #107) and documents attached to that pleading.   ABF and YRCW are  freight trucking companies with employees who are members of local unions affiliated with IBT.  Defendant TNFINC is a bargaining agent for IBT local unions, and defendant TMI is a bargaining agent for trucking industry employers.  Periodically, TNFINC and TMI negotiate the terms of a collective bargaining agreement known as the National Master Freight Agreement ("NMFA"), which has governed unionized freight operations in the United States since 1964.

In August 2007, ABF withdrew its authorization for TMI to bargain on its behalf with respect to the  2008-2013 NMFA, and it attempted to reach its own agreement with the Union by negotiating directly with TNFINC.  On January 30, 2008,  ABF entered an "Interim Agreement" with the Union, which provided that ABF would adhere to the wage, benefits and working condition terms set forth in the NMFA and that following ratification of the 2008-2013 NMFA, ABF would implement the new standards set forth in that agreement.   The Interim Agreement provides that upon ratification of successor (2008-2013) NMFA, "this Interim Agreement shall terminate and [ABF] shall become a party and signatory to such successor [NMFA] and Supplements thereto in accordance with the provisions thereof."  Amend. Compl., Ex. B.

TMI and TNFINC  negotiated the 2008-2013 NMFA, which provides that employers covered under the agreement include "individual Employers who become signator to this Agreement and Supplemental Agreements as hereinafter set forth."  Amend. Compl., ¶ 69.  The 2008-2013 NMFA further provides that individual employers who become party to the

agreement are members of the same multi-employer bargaining unit.   Amend. Compl., ¶ 70.

In February 2008, ABF and YRCW employees voted to ratify the 2008-2013 NMFA, with the ballots of both groups aggregated to determine ratification.   During the three years following ratification of the 2008-2013 NMFA, YRCW and the Union negotiated three amendments (the "Amendments") to the collective bargaining agreement that reduced the pay and benefits of YRCW employees.   IBT and TNFINC have asserted and continue to assert that the Amendments apply only to YRCW.

ABF and TNFINC negotiated and entered a separate compromise, entitled the ABF Freight System, Inc. Wage Reduction-Job Security Plan,[2] which included salary reductions for ABF employees.  However, ABF employees voted against the plan.  Subsequently, on November 1, 2010, ABF submitted a grievance pursuant to the national grievance procedure set forth under Article 8 of the NMFA.  In its grievance, ABF charges that IBT granted substantial economic concessions to some, but not all, employers bound by the NMFA in direct contravention of the NMFA's industry standards for signatory employers--specifically, Article 6, Section 1, which requires employers to maintain work conditions at the highest standards in effect at the time of the signing of the agreement, and Article 6, Section 2(a), which prohibits employers from entering agreements with employees that conflict with the terms of the agreement.  *See* Amend. Compl., Ex. A (ABF Grievance, ¶ 56).

ABF submitted its grievance to the National Grievance Committee ("NGC"), a joint committee composed of an equal number of employer and union representatives.  However, ABF declares in that filing that by operation of the NGC Rules of Procedure, the committee is

---

[2]Docket entry #52, Attach. #1 (McCall Dec.), Ex. S.

incapable of hearing the grievance.  Paragraph 18 of ABF's grievance states:   "Given the incapacity of any member of either the National Grievance Committee or the National Review Panel to hear this grievance, ABF is seeking court intervention to appoint an alternate neutral tribunal to replace the National Grievance Committee . . . to hear and decide this grievance." Amend. Compl., Ex. A, at 4.

At the same time ABF submitted its grievance to the National Grievance Committee, it filed this lawsuit under the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185(a),[3] restating the allegations contained in its grievance but charging both the Union and YRCW with breach of the 2008-2013 NMFA.  By way of relief, ABF asks the Court to appoint a neutral, alternative tribunal to hear its grievance.  Alternatively, in the event that the Court declines to appoint a tribunal, or if a tribunal appointed by the Court fails to reach a final and binding decision, ABF seeks redress directly from the Court.

Defendants moved to dismiss the case for lack of subject matter jurisdiction, arguing that the Union entered a separate agreement with ABF, ABF did not become a signatory to the 2008-2013 NMFA entered by YRCW, and thus ABF lacked ABF lacked standing to enforce a contract to which it is not a party.  The Court held an evidentiary hearing on Defendants' motions and

---

[3]Section 301(a) of the Labor Management Relations Act, codified at 29 U.S.C. § 185(a), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a).

dismissed the complaint for lack of subject matter jurisdiction.

ABF appealed, and the Eighth Circuit reversed.   Noting that the LMRA provides a cause of action for violation of a contract between an employer and a labor organization, the Court of Appeals concluded that because the Union had agreed that ABF would become a party to the 2008-2013 NMFA, this Court has subject matter jurisdiction over ABF's claims against the Union under § 301.  *See  ABF Freight System, Inc. v. International Broth. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011).  As for ABF's claims against YRCW, the Court of Appeals found that this Court has subject matter jurisdiction, at the least, under 28 U.S.C. § 1367(a).[4]

## II.  Defendants' Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim upon which Relief can be Granted

After remand, ABF filed an amended complaint,[5] and each defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   The Union maintains that ABF fails to state a claim upon which relief can be granted "because there is no basis for the Court to either rewrite the parties' contract to create a substitute for the grievance committee, or to permit [ABF] to bypass the grievance procedure and rule directly on the underlying contract claim."  Docket entry #110, at 10.  Similarly, YRCW argues that ABF's request for appointment

---

[4]Title 28 U.S.C. § 1367(a) provides:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

[5]ABF amended its complaint to include additional factual allegations developed while the case was on appeal.  *See* docket entry #98.

of an alternative grievance panel "runs headlong into binding precedent of the Supreme Court" and further asserts that the complaint must be dismissed for failure to exhaust the agreed-to grievance process.  TMI joins YRCW's Rule 12(b)(6) motion.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all facts alleged in the complaint are assumed to be true.  *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997).  The complaint should be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed if there are pled "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  A complaint cannot, however, simply leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Id.* at 1968.  Rather, the facts set forth in the complaint must be sufficient to nudge the claims "across the line from the conceivable to plausible."  *Id*. at 1974.

**A.**     **First Cause of Action:  ABF's Request for Appointment of Alternative Grievance Committee**

Under the heading "First Cause of Action," ABF asks the Court to appoint a panel "composed of disinterested and uninvolved third parties to hear and decide this grievance in order to effectuate the intent of the parties under the NMFA."  Amend. Compl., ¶ 107.

As stated in the amended complaint, the NMFA provides that all grievances or questions of interpretation arising under the NMFA "shall" be processed according to a national grievance procedure set forth under Article 8 of the agreement.   The national grievance procedure set forth under Article 8 involves three steps.  Step one requires that any question concerning the interpretation of NMFA shall be submitted to a permanent NGC, composed of an equal number of employer and union representatives.   If the NGC resolves the dispute by a majority vote of

6

those present and voting, the decision is final and binding on all parties.   However, in the event of a deadlock, the matter proceeds to step two and is referred to the National Review Committee ("NRC"), which consists of the Chairman of TNFINC, or his designee, and the Executive Director of TMI, or his designee.  The NRC has the authority to resolve deadlocked cases by review of the record presented to the NGC, by rehearing, or by referring the case to a subcommittee.  The decision of the NRC is final and binding, but in the event that the committee is unable to resolve a deadlock, the president of the employer involved and the chairman of TNFINC have thirty days to attempt to resolve the dispute.

Article 8, Section 1(b) provides:  "The [NGC] shall adopt rules of procedure which may include the reference of disputed matters to subcommittees for investigation and report, with the final decision or approval, however to be made by the [NGC]."  Amend. Compl., ¶ 114.   Section 1(b) also provides that procedures for referral to the NRC shall be included in the NGC Rules of Procedure.

Consistent with Article 8 of the 2008-2013 NMFA, the 2008-2013 NGC Rules of Procedure provide that the NGC shall be composed of an equal number of employer and union representatives, with alternates on each side.  The procedural rules also provide that NGC employer representatives shall be selected by the president of TMI and union representatives shall be selected by the chairman of TNFINC.  *See* Amend. Compl., Ex. G, Art. II(c)). Important to ABF's first cause of action, the NGC procedural rules also prohibit an employer or union representative from serving on a committee that is hearing a case in which the representative was directly involved or which involves the representative's company or local union--a limitation that is not set forth under Article 8 of the NMFA.

7

ABF alleges that in practice, the NGC and NRC hear narrow disputes between a single employer and a local union, and no representative of the employer or local union involved in the dispute is permitted to sit on the committee hearing the grievance.  *See* Amend. Compl., ¶ 119. In this case, however, ABF's grievance names all NMFA signatory employers and union entities, and ABF maintains that the NGC Rules of Procedure therefore disqualify every member of the NGC and the NRC from hearing its grievance.

According to ABF, the NGC Rules of Procedure are part and parcel of the NMFA, and "the parties agreed to submit all disputes under the NMFA to the contractual grievance process, *subject to the agree-upon Grievance Rules*, which do not permit the members of the NGC and the NRC to resolve this particular grievance."  Docket entry 117, at 22(emphasis added).   ABF contends that the Court has ample authority to effectuate the parties' intent by "appoint[ing] a disinterested tribunal (i.e., a tribunal made up of individuals who satisfy the agreed-upon standards mandating lack of involvement in the dispute) to hear ABF's grievance."   Docket entry #117, at 61.  Defendants maintain that the NGC procedural rules are not part of the bargained-for grievance process and that the relief sought contravenes federal labor policy.

The question before the Court is whether, under the facts pled, the law permits the Court to grant the relief requested in ABF's first cause of action.   In *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912 (1957),[6] the Supreme Court examined federal labor

---

[6]In *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912 (1957), the trial court ordered an employer to comply with the grievance arbitration provisions of a collective bargaining agreement, and the Court of Appeals reversed, holding that the trial court had no authority under the Labor Management Relations Act ("LMRA") to grant such relief. The Supreme Court reversed, holding that, consistent with national labor policy to promote industrial stabilization through the collective bargaining agreement, a grievance arbitration provision in a collective agreement may be enforced by federal courts under the LMRA.  *See id.*,

law policy and held that, consistent with the goal of promoting industrial stabilization through the collective bargaining agreement, a grievance arbitration provision in a collective bargaining agreement may be enforced by federal courts under § 301.  *See Lincoln Mills,* 353 U.S. at 453-454, 77 S.Ct. at 916.   The Court also addressed the substantive law to be applied in suits brought under § 301 and determined that the statute embodies a congressional mandate to federal courts to furnish a body of law from the policy of our national labor laws:

> The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations.   Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.

*Lincoln Mills,* 353 U.S. at 456-457, 77 S.Ct. 912 at 918 (1957)(citing *Board of Commissioners of Jackson County v. United States*, 308 U.S. 343, 351, 60 S.Ct. 285, 288 (1939)).

Later, in a series of cases known as the *Steelworkers Trilogy: Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358 (1960), the Supreme Court endorsed arbitration over litigation as the preferred means of resolving disputes arising under a collective-bargaining agreement, and the Court  articulated legal principles applicable to the arbitration of labor disputes.[7]   The *Trilogy*

---

353 U.S. at 453-454, 77 S.Ct. at 916.

[7]Although the grievance procedures set forth in the NMFA do not employ the word "arbitration," the *Trilogy* principles are applicable in this case.   Both the Supreme Court and the Eighth Circuit have equated grievance procedures with arbitration.  *See General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss & Co.*,372 U.S. 517, 519, 83 S.Ct. 789, 791 (1963)(quoting *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343 (1960)("It is not enough that the word 'arbitration' does not appear in the collective bargaining

principles can be summarized as follows: (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit; (2) the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination; (3) a court is not to rule on the potential merits of the underlying claims when deciding whether the parties have agreed to submit a particular grievance to arbitration; and (4) the presence of an arbitration clause in a collective bargaining agreement creates a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.   *See AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 648-650, 106 S.Ct. 1415, 1418-19 (1986)(citations omitted).

In *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S. Ct. 614 (1965), the Supreme Court further endorsed the federal policy favoring non-judicial resolution of labor disputes, holding that where the contract provides grievance or arbitration procedures for a particular dispute, those procedures must be exhausted.  *See Republic Steel Corp. v. Maddox*, 379 U.S. at 652-653, 85 S.Ct. at 616.  The Court reasoned that sidestepping an available grievance procedure in favor of an immediate lawsuit would exert disruptive influence on both negotiations and administration of collective bargaining agreements.  *See id.*

ABF acknowledges the parties' agreement to submit all questions arising under the

--------

agreement, for we have held that the policy of the Labor Act 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.'"); *see also Tongay v. Kroger Co.*, 860 F.2d 298, 300 (8th Cir.1988).

NMFA to the national grievance procedure, and it agrees that the *subject matter* of its grievance presents questions arising under the NMFA.[8]  But ABF contends that the parties  "agreed *not* to submit this type of grievance to *the regularly constituted NMFA panels*."  Docket entry #117, at 13(emphasis in original).  According to ABF, it is not attempting to evade or sidestep the agree-upon grievance process and is merely seeking the assistance of the Court to "fill the gap left in the parties' agreement by the failure to specify who should act as the grievance panel when all members of the NGC and NRC are disqualified."  Docket entry #117, at 24.

With respect to its first cause of action, ABF asks the Court to (1) declare that neither the NGC nor the NRC has capacity to decide its grievance and (2) appoint a "third party neutral tribunal" to hear and determine its grievance.  Citing *Lincoln Mills,* ABF maintains the Court has wide-ranging authority to grant such relief.  While *Lincoln Mills* gives federal courts authority to fashion a body of federal law for the enforcement of collective bargaining agreements, such law must conform to national labor policy.  In *Granite Rock v. International Broth. of Teamsters*, — U.S. —, 130 S. Ct. 2847 (2010), the Supreme Court made clear that the federal policy favoring arbitration of labor disputes cannot be divorced from the principle that arbitration is strictly a matter consent.  *See Granite Rock v. International Broth. of Teamsters*, 130 S. Ct. 2847. 2858 (2010)(citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920 (1995)).

--------

[8]ABF explains: "To be clear, ABF agrees that this dispute is subject to the contractual dispute resolution mechanism.  ABF invoked those procedures by filing a grievance and stands ready to pursue them.  The next steps of the grievance process are presently unavailable, however, because the NRC and NGC cannot be constituted in the normal manner.  All of the regular members of the committees are disqualified under the Grievance Rules that prohibit participation by the parties directly involved in a grievance."  Docket entry #117, at 38-30.

Defendants rightly note that they did not agree to the form of dispute resolution proposed by ABF.  In essence, ABF is asking the Court to compel Defendants to submit to a dispute resolution process that has little resemblance to the national grievance process set forth under the NMFA.   At step one, the NMFA procedure calls for a joint committee composed of an equal number of employer and union representatives.   The bargained-for dispute resolution method does not, as ABF insists, call for a panel composed of neutral and disinterested third parties.  The Eighth Circuit has noted that the type of  joint labor-employer committee procedure adopted by the parties "is not true arbitration by a neutral third party, but instead involves decisions by joint labor-management panels."  *Stevens v. Highway, City & Air Freight Drivers, Dockmen, and Helpers Local Union No. 600 of the Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America,*  794 F.2d 376, 377-378 (8th Cir. 1986).

Even where an effort to achieve impartiality is made by a requirement that neither the employer nor the local union involved in the particular dispute is to be represented on the grievance panel, it cannot be said that panel members are disinterested or neutral, and the joint-committee method is still subject to abuses, including "the potential sacrifice of individual grievants' interests to the broader institutional concerns of labor and management."  *Barrentine v. Arkansas-Best Freight System*, 615 F.2d 1194, 1201 (8th Cir.1980), *rev'd on other grounds*, 450 U.S. 728, 101 S.Ct. 1437 (1981).   Nonetheless, "the law seems to be established that the joint committee method ... is valid."  *Id.*

In addition to asking for a disinterested panel to hear its grievance, ABF seeks to bypass steps two and three of the bargained-for grievance process by proposing that if the court-appointed panel deadlocks and fails to resolve ABF's grievance, the Court should resolve its

12

breach of contract claims.  The Court finds that the parties did not agree to the dispute resolution process proposed by ABF and that the remedy sought would not give effect to the parties' agreement.

ABF notes that courts frequently appoint arbitrators under the Federal Arbitration Act ("FAA"), pursuant to 9 U.S.C. § 5, which reads:

> *If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed*; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5(emphasis added).  The Court disagrees that the forgoing provision applies here.  The

NMFA, which calls for an open-ended grievance process and does not mandate binding arbitration,  provides that the NGC shall be composed of an equal number of employer and union representatives, and it specifically gives the NGC the duty to adopt procedural rules.  The NGC procedural rules, in turn, require that NGC members be selected by the President of TMI, with respect to employer representative, and the Chairman of TNFINC, with respect to union representatives.  Although the NGC Rules of Procedure prohibit an employer or union representative from participating on a panel hearing a case in which he or she was directly involved or which involves his or her union or company, the Rules also provide:  "These Rules of Procedure may be amended or modified by majority vote of the National Grievance Committee."  Amend. Compl., Ex. G (NGC R. P. Art. VII).   Accordingly, this is not a case in

13

which the parties' agreement fails to provide a method for naming or appointing an arbitrator.[9]

ABF asserts that the NGC is disqualified from addressing the procedural standstill in this case, but neither the NMFA nor the NGC Rules of Procedure require that only disinterested, uninvolved, or neutral representatives serve on the NGC for the purpose of adopting procedural rules.

ABF protests that the parties did not intend that the NGC would resolve the procedural dispute at issue.  To support this argument, ABF submits a copy of the 1998-2003 and 2003-2008 NGC Rules of Procedure, which also required that neither employer nor union representatives involved in a particular dispute serve on a committee hearing that dispute.  *See* docket entry #118, Ex. A, docket entry #119, Ex. B.  ABF proposes that inclusion of the non-involvement provision in past versions of the NGC Rules demonstrates that it has "long been a fundamental part of the parties' agreed-upon grievance system."  *See* docket entry #117, at 2-3. Defendants note, however, that the NGC Rules in force under the 1998-2003 and 2003-2008 NMFA's also provided that the Rules could be amended or modified by majority vote of the NGC.

--------

[9]ABF suggests that the Court must have "clear and unmistakable" evidence that the parties intended that the NGC resolve issues regarding the selection of panel members.  When deciding whether the parties have agreed to submit the question of *arbitrability* to the arbitrator, courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S.938, 944, 115 S. Ct. 1920, 1924 (1995)(citations omitted).  "In this manner the law treats silence or ambiguity about the question "who (primarily) should decide arbitrability; differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement–for in respect to this latter question the law reverses the presumption.*"  First Options*, 514 U.S. at 944-945, 115 S. Ct at 1924(citation omitted).  Here, the NMFA is not silent or ambiguous about who will adopt rules of procedure governing the grievance process, and the question whether NGC  has such authority has no bearing on the principle that the court decides arbitrability..

14

In sum, the Court disagrees that 9 U.S.C. § 5 supports ABF's request for appointment of a neutral arbitrator, as that provision does not empower a court to appoint an arbitrator when the parties have agreed to a method for naming or appointing an arbitrator.

The Court further finds that permitting the NGC to address the procedural problem in this case effectuates national labor policy. The LMRA provides: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 1346 (1960). Additionally, permitting the NGC to address the procedural issue preventing the grievance procedure from going forward is consistent with the Supreme Court's admonition that procedural questions should be left to the arbitrator:

> Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.
>
> *        *        *        *        *
>
> [W]e think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play.

*John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 558-559, 84 S.Ct. 909, 919 (1964).

In conclusion, the Court finds that ABF has failed to state facts which would allow the Court to appoint an alternative tribunal to hear its grievance. Accordingly, the Court agrees that ABF's first cause of action must be dismissed.

15

**B.      Second Cause of Action:  ABF's Claim for Breach of the NMFA**

For its second cause of action, ABF seeks relief directly from the Court for Defendants'

alleged violation of the NMFA.   This relief is sought as an alternative to that pled in Count I.

ABF thereby seeks to proceed in Count II <u>only</u> if there is no grievance procedure available.

Defendants move to dismiss the second cause of action for failure to exhaust the NMFA

grievance procedure.   For the purpose of their motion to dismiss, YRCW and TMI accept ABF's

allegation that the parties are signatories to the same collective bargaining agreement.  *See*

docket entry #129, at 30.

Defendants assert that ABF's failure to exhaust is apparent from the face of the amended

complaint,  thus the pleading is subject to dismissal for failure to state a claim for which relief

can be granted.   ABF argues that dismissal is not proper for three reasons: (1) ABF is pursuing

the agreed-to grievance procedure; (2) failure to exhaust is an affirmative defense that must be

pleaded and proved, and dismissal under Rule 12(b)(6) is not proper because the defense does

not appear on the face of the complaint; and (3) Defendants' have waived their right to assert the

grievance process as a defense.

The Court first considers the waiver issue.  ABF asserts that the Union has waived its

right to assert the grievance process as a defense by filing a previous motion to dismiss that

sought an "immediate and total victory on the merits of ABF's claims."  Docket entry #117, at

46.  Although contract grievance procedures are the preferred method for settling labor disputes,

a party may implicitly waive its contractual right to a grievance procedure by engaging in

evasive and dilatory litigation-related activities.  *See Jones Motor Co., Inc. v. Chauffeurs,*

16

*Teamsters and Helpers Local Union No. 633 of New Hampshire* 671 F.2d 38, 42 (1st Cir. 1982); *E.T. Simonds Construction Co. v. Local 1330, International Hod Carriers*, 315 F.2d 291 (7th Cir.1963); *Reid Burton Const., Inc. v. Carpenters Dist. Council of Southern Colorado*, 614 F.2d 698, 700-701 (10th Cir. 1980).

A party may waive arbitration rights by substantially invoking the litigation machinery before seeking arbitration. *See Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993).  However, "[i]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Id.* at 978-69.  In this Circuit, a waiver of arbitrability may be found where the party claiming the right to arbitrate: (1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions. *See Dumont v. Saskatchewan Government Ins.*, 258 F.3d 880, 886 (8th Cir. 2001).

Here, the Court finds that the Union's motion to dismiss the original complaint was not inconsistent with its grievance rights.  The Union sought dismissal for lack of subject matter jurisdiction (a matter that is a threshold issue in any case) and argued, among other things, that ABF was bound to proceed with its grievance before the NGC.  *See* docket entry #52, at 18. ABF, not the Union, stopped the grievance procedure from moving forward by filing this action. Nor does the Court find that the Union's actions have prejudiced ABF.  The parties have not engaged in discovery or litigated substantial issues on the merits, and it would not be inequitable at this stage to require ABF to proceed under the grievance procedure.

Next, the Court turns to ABF's argument that failure to exhaust is an affirmative defense that must be pleaded and proved, and dismissal under Rule 12(b)(6) is not proper because the

17

defense does not appear on the face of the complaint.    As demonstrated by the complaint allegations, ABF instituted this lawsuit on the premise that steps one and two of the grievance procedure are unavailable because the NRC and NGC cannot be constituted as required under the NGC Rules of Procedure.   However, for reasons explained in connection with Defendants' motions to dismiss ABF's first cause of action, ABF has failed to allege facts demonstrating that the grievance procedure is unavailable.  Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*  556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009).  Here, the well-pleaded facts simply do not permit the Court to draw a reasonable inference that the agreed-to grievance procedure is unavailable or that it would be futile for ABF to attempt to resolve its grievance through that procedure.

Because ABF has failed to allege facts showing that exhaustion is not required in this case, it appears from the face of the complaint that ABF has failed to exhaust the NMFA grievance procedure.  See *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S. Ct. 614 (1965)(holding that where a collective bargaining agreement provides grievance or arbitration procedures for a particular dispute, those procedures must be exhausted before a lawsuit is pursued).  Although failure to exhaust is normally an affirmative defense, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face. *See Nash v. Lappin*, 172 Fed. Appx. 702, 703 (8th Cir.2006)(affirming dismissal because "[w]hile the exhaustion requirement is an affirmative defense that a defendant must plead and prove, ... it is clear from the dates of the alleged incidents that Nash could not have administratively exhausted all of his claims when he filed the lawsuit"); *see also Myers v. Vogal*, 960 F.2d 750,

751 (8th Cir.1992) ("Although the statute of limitations is an affirmative defense, a district court

may properly dismiss . . . when it is apparent [from the face of the complaint] that the statute of

limitations has run.").

ABF states that it has pursued and is pursing the grievance process, and it stands ready to

prosecute the NMFA grievance procedures, which it has already invoked.  *See* docket entry 117,

at 38-39.   Given that affirmation, the Court trusts that ABF will move forward with its grievance

under the NMFA grievance procedure.  The Court grants Defendants' motion to dismiss ABF's

second cause of action.

### III. Defendant TMI's Motion to Dismiss First Cause of Action for Lack of Subject Matter Jurisdiction

TMI, moving separately, asserts that the Court lacks subject matter jurisdiction over

ABF's first cause of action, seeking appointment of an alternative tribunal, because only claims

based on past violations of a labor agreement fall within § 301's jurisdictional scope.  TMI views

ABF's first cause of action as alleging an anticipated violation of the NGC Rules of Procedure,

not a past violation of a labor agreement.   Although the Court finds that TMI's motion is moot

based on the Court's determination that the first cause of action must be dismissed under Rule

12(b)(6), the Court will address the merits of TMI's motion.

ABF frames its first cause of action as an attempt to enforce the NMFA grievance

procedure, and it is well-settled that federal courts have subject matter jurisdiction to enforce a

grievance provision contained in a collective bargaining agreement.  *See Textile Workers Union

of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912 (1957).  Viewing the complaint in a light

most favorable to ABF, TMI's jurisdictional argument must fail.

As noted by the Eighth Circuit, the extent of relief that may be granted under § 301 must

19

be distinguished from the issue of subject matter jurisdiction.  *See ABF Freight System, Inc. v. International Broth. of Teamsters,*  645 F.3d 954, 964 (8th Cir. 2011)(citing *Avco Corp. v. Aero Lodge No*. 735, 390 U.S. 557, 561, 88 S.Ct. 1235 (1968)(quoting *Swift & Co. v. United States*, 276 U.S. 311, 331, 48 S.Ct. 311 (1928)("[T]he breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter. Any error in granting or designing relief 'does not go to the jurisdiction of the court.' ").

## IV.  Conclusion

For the reasons stated, Defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (docket entries #109, #111) is GRANTED.   Pursuant to the judgment entered together with this order, this case is DISMISSED WITHOUT PREJUDICE.  It is further ordered that Defendant Trucking Management, Inc.'s motion to dismiss pursuant to 12(b)(1) (docket entry #113) is DENIED.

IT IS SO ORDERED THIS 1ST DAY OF AUGUST, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

20